

BOBBY JINDAL
Governor

JAMES M. LE BLANC
Secretary

# State of Louisiana

Department of Public Safety and Corrections
Louisiana State Penitentiary

STATE OF LOUISIANA
WEST FELICIANA PARISH
ANGOLA, LOUISIANA

I hereby certify that the attached documents are TRUE AND CORRECT

COPIES of the original documents maintained at the Louisiana State

Penitentiary.

Administrative Remedy Procedure No. LSP-2012-3321

*Connie M\u{c} Cann*

Connie McCann #77912
Ex-Officio Notary
Department of Public Safety & Corrections/LSP

Date: 2/4/14

Herbert Martin #76859 Case

EXHIBIT
6

LOUISIANA STATE PENITENTIARY
ANGOLA, LOUISIANA

INMATE:    76859 HERBERT MARTIN

LOCATION:   J CUDA 1/L

### ACKNOWLEDGMENT OF RECEIPT OF SECOND STEP   RESPONSE

This will acknowledge receipt of the SECOND STEP response
(SECRETARY'S RESPONSE) OF ARP LSP- 2012-3321 .

RECEIVED BY: _Hubert G. Martin 76859_

DATE RECEIVED: _2 | 6 | .13_

DELIVERED BY: _Robert Wn_

========================================================
INSTRUCTIONS TO DELIVERY OFFICER:

1.   Have the inmate sign and date the second step portion of
     the envelope acknowledging receipt of the second step
     response.

2.   Have the inmate sign this receipt.

3.   Delivery Officer signs receipt and dates it.

4.   Give the inmate the contents of the envelope.

5.   Return the envelope and the receipt to LEGAL PROGRAMS DEPARTMENT.

RECEIVED

FEB 08 2013

Legal Programs Department

12-18

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES

CASE NUMBER: LSP-2012-3321

SECOND STEP RESPONSE FORM
(HEADQUARTERS)

TO: <u>MARTIN, HERBERT   76859</u>                                     <u>LSP</u>
    Offender Name and Number                                     Living Unit

Response to Request Dated 12/17/2012, Received in this Office on 12/21/2012:

Your request for an Administrative review of ARP# LSP-2012-3321 has been received. A qualified
member of the Headquarters staff has reviewed your request in order to render a fair and impartial
response.

All pertinent documentation surrounding your request, including the unusual occurrence report,
statements provided by the security staff and your medical records have been reviewed. None of the
documents reviewed support your allegations. Through your own actions, staff was forced to use only the
amount of force necessary to bring you into compliance with the verbal orders issued to you by staff.
Major Hooker, Captain Sanders and Sgt. Adams deny your allegations as well and there is no reason to
doubt the credibility of this officer. You have failed to provide any evidence to substantiate your
allegations or that would cause us to believe otherwise. This office concurs with staff's findings on this
matter. As such, no further investigation or administrative intervention warranted.

Your request for Administrative Remedy is denied.

_____                    _____
01/31/13                                     
Date                                         Secretary's Signature of His Designee

**R E C E I V E D**

**FEB 0 5 2013**

Legal Programs Department

CASE NUMBER: LSP-2012-3321

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: MARTIN, HERBERT 76859                    J GAR 2/R
                                             Living Quarters

Response to request dated 10/28/2012, received in this office on 10/29/2012

In your letter of complaint dated October 22, 2012, while housed at Camp J, you state that Major Hooker, Captain Sanders and Sergeant Adams used physical force on you. Major Hooker stated that on July 25, 2012, Offender Martin became very combative, while being removed from the yard pen, the only force used was that which was necessary. At no time was offender Martin punched or kicked and at no time was offender Martin head pushed into the shower not into the concrete. Sergeant Adams stated that on July 25, 2012, Offender Martin attacked Captain Sanders, when he was taken off the yard. Major Hooker and Captain Sanders did only what was necessary to get the situation under control. Institutional records reflect that on July 25, 2012, that you had passed out on the yard during your yard exercise. Major Hooker and Captain Sanders proceeded to the yard pen and questioned you concerning your condition. Offender Martin then stated that he felt like he had a diabetic seizure. Captain Sanders then gave you a direct verbal order to come to the gate and be restrained, Offender Martin complied with the orders and was placed in a full set of restraints to be removed from the yard. Sergeant Adams then proceeded in opening the yard pen gate, offender Martin then immediately charged out of the yard pen gate at Captain Sanders attempting to head butt him. Captain Sanders immediately stepped to the side and offender Martin proceeded through the gate tripped and fell on the yard pen side walk. Major Hooker and Captain Sanders immediately approached offender Martin in order to assist the offender. Offender Martin then became very combative by wrestling and cursing Major Hooker and Captain Sanders. Major Hooker and Captain Sanders gave you several direct verbal orders to stop being combative and stop wrestling and cursing, you flatly refused all orders given. At this time Major Hooker and Captain Sanders had to place arm locks on you to gain compliance and get you to walk while you were escorted to Gar unit to be placed into Administrative Segregation. You were physically escorted to Gar unit and you continued to struggle with Major Hooker and Captain Sanders resisting and attempting to pull away. Major Hooker and Captain Sanders continued to give you several orders to stop resisting and you continued to refuse all orders given and had to be escorted in arm locks to Gar unit. You were then placed into the shower on Gar 1 right. Major Hooker then gave you several direct verbal orders to come to the bars so the restraints could be removed, you flatly refused all orders given. Captain Sanders then exited the tier, obtained a can of chemical agent and returned to the shower, Major Hooker then obtained the can of chemical agent from Captain Sanders and gave offender Martin several more direct verbal orders to come to the bars so that the restraints could be removed, you again refused all orders given. Major Hooker then administered a one second burst of chemical agent into the shower and you complied with his orders. You were allowed to shower, given a clean jumpsuit and sent to the Treatment Center. Institutional records reflect that you were seen by medical personnel on July 25, 2012. In accordance with Penitentiary Directive 09.002, the only force used was that which was necessary to gain control of the situation. Institutional records reflect that supervisors made rounds on your unit, you could and should have brought this or any other compliant to their attention. No evidence was found to support your allegations.

Your request for Administrative Remedy is denied.

Prepared by: _____

Robert Butler/AWII/lv

Approved by: _____

Joe Lamartiniere/AWIII/tlb

*12-12-2012*
_____
Date

_____
Unit Head

Instructions to Offender: If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

(✓) I am not satisfied with this response and wish to proceed to Step Two.

Reason: *SEE ORIGINAL A.R.P. ?*
_____
_____
_____

*December 12/17/2012*
_____
Date

*Herbert G. Martin #076859*
_____
Offender's Signature    DOC#



LOUISIANA STATE PENITENTIARY

ANGOLA, LOUISIANA

ARP NUMBER:  LSP - 2012 - 3321

RE:  HERBERT MARTIN    76859

LOCATION: _J Cuda 1/R_____

I HEREBY ACKNOWLEDGE RECEIPT OF 1ST STEP RESPONSE FORM REGARDING REQUEST
FOR REMEDY NUMBER LSP-2012-3321.

RECEIVED BY: _Herbert G. Martin # 076859_____
                     (INMATE'S NAME & NUMBER)

DATE RECEIVED: _12-14-12_____

DELIVERED BY: _msg tendall_____

=================================================================================

1.    Have the inmate sign this receipt.

2.    Delivery Officer signs the reciept and dates it.

3.    Give the Inmate the Manila Envelope and contents.

4.    Return the reciept to LEGAL PROGRAMS DEPARTMENT.

R E C E I V E D

DEC 17 2012

Legal Programs Department

CASE NUMBER: LSP-2012-3321

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)


TO: MARTIN, HERBERT 76859                    J GAR 2/R
                                             Living Quarters



Response to request dated 10/28/2012, received in this office on 10/29/2012

In your letter of complaint dated October 22, 2012, while housed at Camp J, you state that Major Hooker, Captain Sanders and Sergeant Adams used physical force on you. Major Hooker stated that on July 25, 2012, Offender Martin became very combative, while being removed from the yard pen, the only force used was that which was necessary. At no time was offender Martin punched or kicked and at no time was offender Martin head pushed into the shower not into the concrete. Sergeant Adams stated that on July 25, 2012, Offender Martin attacked Captain Sanders, when he was taken off the yard. Major Hooker and Captain Sanders did only what was necessary to get the situation under control. Institutional records reflect that on July 25, 2012, that you had passed out on the yard during your yard exercise. Major Hooker and Captain Sanders proceeded to the yard pen and questioned you concerning your condition. Offender Martin then stated that he felt like he had a diabetic seizure. Captain Sanders then gave you a direct verbal order to come to the gate and be restrained, Offender Martin complied with the orders and was placed in a full set of restraints to be removed from the yard. Sergeant Adams then proceeded in opening the yard pen gate, offender Martin then immediately charged out of the yard pen gate at Captain Sanders attempting to head butt him. Captain Sanders immediately stepped to the side and offender Martin proceeded through the gate tripped and fell on the yard pen side walk. Major Hooker and Captain Sanders immediately approached offender Martin in order to assist the offender. Offender Martin then became very combative by wrestling and cursing Major Hooker and Captain Sanders. Major Hooker and Captain Sanders gave you several direct verbal orders to stop being combative and stop wrestling and cursing, you flatly refused all orders given. At this time Major Hooker and Captain Sanders had to place arm locks on you to gain compliance and get you to walk while you were escorted to Gar unit to be placed into Administrative Segregation. You were physically escorted to Gar unit and you continued to struggle with Major Hooker and Captain Sanders resisting and attempting to pull away. Major Hooker and Captain Sanders continued to give you several orders to stop resisting and you continued to refuse all orders given and had to be escorted in arm locks to Gar unit. You were then placed into the shower on Gar 1 right. Major Hooker then gave you several direct verbal orders to come to the bars so the restraints could be removed, you flatly refused all orders given. Captain Sanders then exited the tier, obtained a can of chemical agent and returned to the shower, Major Hooker then obtained the can of chemical agent from Captain Sanders and gave offender Martin several more direct verbal orders to come to the bars so that the restraints could be removed, you again refused all orders given. Major Hooker then administered a one second burst of chemical agent into the shower and you complied with his orders. You were allowed to shower, given a clean jumpsuit and sent to the Treatment Center. Institutional records reflect that you were seen by medical personnel on July 25, 2012. In accordance with Penitentiary Directive 09.002, the only force used was that which was necessary to gain control of the situation. Institutional records reflect that supervisors made rounds on your unit, you could and should have brought this or any other compliant to their attention. No evidence was found to support your allegations.

Your request for Administrative Remedy is denied.

Prepared by: _____
Robert Butler/AWII/4v

Approved by: _____
Joe Lamartiniere/AWIII/tlb

_12-12-2012_
Date

_____
Unit Head

Instructions to Offender: If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

( )  I am not satisfied with this response and wish to proceed to Step Two.

Reason:

_____
_____
_____
_____

_____              _____
Date                            Offender's Signature    DOC#

## Louisiana State Penitentiary
## Angola Louisiana

### ARP STATEMENT

| Claim Number: | ARP-2012-3321 | | DATE: | 12-3-2012 |
|---|---|---|---|---|
| Offender's Name: | Herbert Martin #76859 | | | |

In response to the above numbered ARP, I submit the following statement:;

On 7/25/12 Offender Martin became very combative when being removed from the yard pen. The only force used on Offender Martin by Capt. Sanders or myself was arm locks to gain control of the situation and the administering of chemical agents to gain compliance in the shower. At no time was Offender Martin punched or kicked. At no time was his head pushed into the wall of the shower nor into the concrete. All of this offenders allegations are false and without merit.

| PRINT YOU NAME | Joseph Hooker, Major | DATE | 12/3/12 |
|---|---|---|---|

SIGNATURE OF OFFICER

## Louisiana State Penitentiary
## Angola Louisiana

## ARP STATEMENT

| Claim Number: | ARP-2012-3321 | DATE: | 12-3-2012 |
|---|---|---|---|
| Offender's Name: | Herbert Martin #76859 | | |

In response to the above numbered ARP, I submit the following statement:;

On 7/25/12 Offender Martin was being removed from the yard pen at which time he charged out attempting to head butt me.   The only force used by Major Hooker and myself used arm locks to gain control of the situation, and the administering of chemical agents to get the offender to cooperate in the shower. At no time was Offender Martin punched, or kicked. Nor was he slammed into the shower wall or concrete.  All of this offenders allegations are false and without merit.

| PRINT YOU NAME | John Sanders, Capt. | DATE | 12/3/12 |
|---|---|---|---|

_Capt John Sanders_

SIGNATURE OF OFFICER

## Louisiana State Penitentiary
## Angola Louisiana

## ARP STATEMENT

| Claim Number: | ARP-2012-3321 | | DATE: | 12-3-2012 |
|---|---|---|---|---|
| Offender's Name: | Herbert Martin #76859 | | | |

In response to the above numbered ARP, I submit the following statement:;

On 7/25/12 Offender Martin attacked Capt. Sanders when he was taken off of the yard. Major Hooker and

Capt. Sanders did only what was necessary to get the situation under control . All of this offender's statements

are untrue.

| PRINT YOU NAME | Dwayne Adams, Sgt. | DATE | 12/3/12 |
|---|---|---|---|

*Dwayne Adams Sgt*
SIGNATURE OF OFFICER

## LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
### DISCIPLINARY REPORT

INSTITUTION: **LSP**

| | | | |
|---|---|---|---|
| 1. Name Of Inmate: Herbert Martin | 2. Number: #76859 | 3. Date of Incident: 7/25/12 | 4. Time Of Incident: 11:05am |
| 5. Place Of Incident: Gator yard pen and Gator walk | 6. Job Assignment (Inmate): Camp J Management Program | | 7. Housing Assignment (Inmate): Gator 3 Right |
| 8. Rule Violated: Defiance, Aggravated Disobedience | | 9. Rule Number: #3,#5 | |

10. Description Of Incident (Include all relevant information – "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side if necessary).

On the above date and approximate time Capt. Sanders was summoned to Gator unit at which time I walked with him to the unit, on arrival Sgt. Adams informed us that Offender Herbert Martin had passed out on the yard during his daily yard exercise. Capt. Sanders and I proceeded to the yard pen and questioned Offender Martin concerning his condition. Offender Martin then stated that he felt like he had a diabetic seizer. Capt. Sanders then gave the offender a direct order to come to the gate and be restrained, Offender Martin complied with the order and was placed in a full set of restraints to be removed from the yard. Sgt. Adams then proceeded in opening the yard pen gate Offender Martin then immediately

11. Inmate Placed in Adm. Seg.  ☒ Yes  ☐ No

12. Signature of reporting employee:

13. Name, Title, Assignment (Print) Joseph Hooker, Major Camp J B/Team

| | | | |
|---|---|---|---|
| 14. Date of Report: 7/25/12 | 15. Time of Report: 3:00pm | 16. Report (copy) given to above inmate by: | 17. Inmate's Signature: |

18. Plea by Inmate:  ☒ Not Guilty  ☐ Guilty     19. Verdict:  ☐ Not Guilty  ☒ Guilty

20. Date of Hearing: 7/27/12          21. Counsel Substitute: DOC#: 91275

22. Motions:

23. Reasons for Disposition:
- ☒ Report is clear and precise.
- ☒ The officer's version is determined to be more credible than the inmate's.
- ☒ Only defense is denying contents of report.
- ☐ The investigative officer's testimony was deemed more truthful and accurate than the inmate's.
- ☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
- ☐ Other
- ☐ Lack of a credible defense/little or no defense.
- ☐ Pled guilty/accepted guilty plea.
- ☐ The inmate presented no evidence to refute the charges.
- ☐ Based on his statement.
- ☐ Plea bargain.

24. Reasons for Sentence:
- ☒ Seriousness of offense.
- ☐ The need to protect the institution, employees, or other.
- ☐ Poor Conduct record. A total of _____ rule violations(s). A total of _____ Schedule B violations since _____
- A total of _____ # _____ rule violations since _____
- ☐ Other

25. Sentence:
#3  Loss of 12 Weeks Canteen    Suspended ☐ _____ Days    Imposed ☒

26. Sentence:
#5  Loss of 12 Weeks Phone Privgs    Suspended ☐ _____ Days    Imposed ☒

27. DISCIPLINARY BOARD:
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

CHAIRMAN (DISCIPLINARY OFFICER)

MEMBER  Jennifer Eller

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**DISCIPLINARY REPORT**

INSTITUTION: | LSP

| | | | |
|---|---|---|---|
| 1. Name Of Inmate:<br>Herbert Martin | 2. Number:<br>76859 | 3. Date of Incident:<br>7/25/12 | 4. Time Of Incident:<br>Approx. 11:05 am |
| 5. Place Of Incident:<br>Gator Yard Pen / Gator Walk | 6. Job Assignment (Inmate):<br>Camp J Management Program | | 7. Housing Assignment (Inmate):<br>Gator Three Right |
| 8. Rule Violated:<br>Defiance, Aggravated Disobedience | | 9. Rule Number:<br>#3, #5 | |

10. Description Of Incident (Include all relevant information – "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side if necessary).

On the above date and approximate time, I, Capt. Sanders, was summoned to Gator Unit. Upon arrival Sgt. Adams informed me that Offender Herbert Martin had passed out on the yard during his daily yard exercise. Major Hooker and I proceeded to the yard pen and questioned Offender Martin concerning his condition. Offender Martin stated that he felt like he had a diabetic seizer. I then gave the offender a direct verbal order to come to the gate to be restrained. Offender Martin complied with the order and was placed in a full set of restraints to be removed from the yard pen. Sgt. Adams then proceeded in opening the yard pen gate. Offender Martin then immediately charged out of the yard pen at me attempting to head butt me. I, Capt. Sanders, immediately stepped to the side and Offender Martin proceeded through the gate, tripping and falling on the yard pen sidewalk. Major Hooker and I immediately approached Offender Martin and assisted him to his feet. Offender Martin then became very combative and started wrestling and cursing Major Hooker and myself. Major Hooker gave him several direct verbal orders to stop being combative and to stop cursing.

11. Inmate Placed in Adm. Seg.  ☒ Yes   ☐ No

12. Signature of reporting employee: _[signature]_  | 13. Name, Title, Assignment (Print)<br>John Sanders, Capt. Camp J B Team

14. Date of Report: 7/25/12  | 15. Time of Report: 4:00PM  | 16. Report (copy) given to above inmate by: _[signature]_  | 17. Inmate's Signature: _[signature]_

18. Plea by Inmate:  ☒ Not Guilty   ☐ Guilty    19. Verdict:  ☐ Not Guilty   ☒ Guilty

20. Date of Hearing: 7/27/12   | 21. Counsel Substitute:<br>DOC#: 81875

22. Motions:

23. Reasons for Disposition:
☒ Report is clear and precise.   ☐ Lack of a credible defense/little or no defense.   ☐ Based on his statement.
☒ The officer's version is determined to be more credible than the inmate's.   ☐ Pled guilty/accepted guilty plea.
☒ Only defense is denying contents of report.   ☐ The inmate presented no evidence to refute the charges.
☐ The investigative officer's testimony was deemed more truthful and accurate than the inmate's.   ☐ Plea bargain.
☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
☐ Other

24. Reasons for Sentence:
☒ Seriousness of offense.   ☐ The need to protect the institution, employees, or other.
☐ Poor Conduct record.  A total of _____ rule violations(s). A total of _____ Schedule B violations since _____.
        A total of _____ # _____ rule violations since _____.
☐ Other

25. Sentence:  Disc. Detention  ☐ Suspended   ☒ Imposed   _____ Days
#3  10 days Cell Confinement

26. Sentence:  ☐ Suspended   ☒ Imposed   _____ Days
#5  Loss of (12) weeks Canteen

27. DISCIPLINARY BOARD:
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

_[signature]_ Antonia Whitaker, Mjr.
CHAIRMAN (DISCIPLINARY OFFICER)
_[signature]_ Jennifer Eller
MEMBER

Form C-05-001-W-1
15 July 2011

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
UNUSUAL OCCURRENCE REPORT
(Category A, B, C Incidents)

INSTITUTION: Louisiana State Penitentiary

| Name: Herbert Martin | Number: #76859 | Dorm Or Cellblock: Gator 3 Right | Date Of Incident: 7/25/12 | Time Of Incident: 11:05am |
|---|---|---|---|---|
| Location Of Incident: Gator yard pen and Gator walk | | Witnesses: Sgt. D. Adams and Capt. J. Sanders | | |

**TYPE OF INCIDENT - CHECK APPROPRIATE BOXES**

**Category A Incidents:**
- ☐ Escape
- ☐ Death by other than natural causes
  - ☐ Accident
  - ☐ Violence
  - ☐ Suicide
  - ☐ Suspicious
  - ☐ Unknown
  - ☐ Unnatural
  - ☐ Execution
- ☐ Assault resulting in life threatening Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Staff Injured in Line of Duty
- ☐ Other
  - ☐ Significant Property Damage
  - ☐ Hostage Situation
  - ☐ Major Work Stoppage of Offenders
  - ☐ Employee Work Stoppage
  - ☐ Riot
  - ☐ Natural Disaster
  - ☐ Tact Team/Outside Assistance
  - ☐ Lockdown of all or part of facility
  - ☐ Hunger Strike of Entire Facility or Multiple Units
  - ☐ Large Scale Evacuation
  - ☐ Other - Determined by Unit Head

**Category B Incidents:**
- ☐ Escapee Apprehended
- ☐ Death Due to Natural Causes
  - ☐ Expected
  - ☐ Unexpected
- ☐ Gunshot - Shoot to disable (Class I)
- ☐ Assault with significant injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Attempted Suicide with Significant Injury
  - ☐ Self Mutilation with Significant Injury
- ☐ Hunger Strike – Individual
- ☐ Hunger Strike – Organized
- ☐ Use of Force w/Significant Injury
  - ☐ Lockdown of Limited Number of Offenders
- ☐ Significant Water/Power Outage
- ☐ Property Damage - Limited
- ☐ Evacuation – Limited
- ☐ Other – Employee Arrest
- ☐ Other - Determined by Warden

**Category C Incidents:**
- ☐ Agg. Sex Offense (Offender/Staff)*
- ☐ Agg. Sex Offense (Offender/Offender)*
- ☐ Staff/Civilian Sexual Misconduct*
- ☐ Gunshot - Warning Shot (Class II)
  - ☐ Self Defense - No Human Injury or Death
- ☒ Assault With No Significant Injury
  - ☒ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Throwing of Substances
- ☒ Use of Force
  - ☒ Immediate
  - ☐ Planned
  - ☒ Chemical Agents on Single Offender
  - ☐ Use of Taser
  - ☐ Cell Entry Team (Elec. Shield)
  - ☐ Less Lethal Weapons
  - ☐ Restraints Used (Restraint Chair, 4 Point, etc.)
  - ☐ Staff on Offender
- ☐ Individual Hunger Strike

* Copy to Investigations

**DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)**

On the above date and approximate time Capt. Sanders was summoned to Gator unit at which time I walked with him to

the unit, on arrival Sgt. Adams informed us that Offender Herbert Martin had passed out on the yard during his daily yard

Joseph Hooker, Major

7/25/12
Date Completed

12:40pm
Time Completed

| Name: Herbert Martin | Number: #76859 | | Dorm or Cellblock: Gator 3 Right | Date of Incident: 7/25/12 | Time of Incident: Approx 11:05 am |
|---|---|---|---|---|---|
| Location of Incident: Gator yard pen and Gator walk | | | Witnesses: Sgt. D. Adams & Capt. J. Sanders | | |

### (Description of Incident Continued)

exercise. Capt. Sanders and I proceeded to the yard pen and questioned Offender Martin concerning his condition.

Offender Martin then stated that he felt like he had a diabetic seizer. Capt. Sanders then gave the offender a direct order

to come to the gate and be restrained, Offender Martin complied with the order and was placed in a full set of restraints to

be removed from the yard. Sgt. Adams then proceeded in opening the yard pen gate Offender Martin then immediately

charged out of the yard pen gate at Capt. Sanders attempting to head butt him. Capt. Sanders immediately stepped to

the side and Offender Martin proceeded though the gate tripping and falling on the yard pen side walk. Capt. Sanders

and I immediately approached Offender Martin in assistance of getting back up on his feet. Offender Martin then became

very combative by wrestling and cursing Capt. Sanders and myself,(While wrestling with Offender Martin I hit my right

knee on the concrete causing a laceration on my knee and a hole in my pants.) Capt. Sanders and I gave Offender Martin

several direct verbal orders to stop being combative and stop the wrestling cursing. Offender Martin flatly refused all

orders given at which time Capt. Sanders and myself had to place arm locks on Offender Martin to gain compliance and

get offender Martin to walk to Gar unit to be placed in Adm. Seg. Offender Martin was physically escorted to Gar unit and

continued to struggle with Capt. Sanders and myself resisting and attempting to pull away form us. Capt. Sanders and

myself continued to give Offender Martin several orders to stop resisting and he continued to refuse all orders given and

had to be escorted in arm locks all the way to Gar unit. Offender Martin was then placed in the Shower on Gar 1 Right. I

Major Hooker then gave Offender Martin Several direct verbal orders to give up his jump suit for a shakedown, Offender

Martin flatly refused all orders given. Capt. Sanders then exited the tier, obtained a can of phantom chemical agent and

returned to the shower. I then obtained the can of chemical agent from Capt. Sanders and gave Offender Martin several

more direct verbal orders to come to the bars so that the restraints could be taken off of him and he again flatly refused all

orders given. I was then forced to administer a one second burst of chemical agent into the shower to gain compliance.

Then and only then did Offender Martin comply with my orders. Offender Martin was then given a shower, clean jumpsuit,

sent to the Treatment Center to be evaluated for injuries that may have occurred during this confrontation, and place in

Adm. Seg. upon returning to the Camp. . Capt. Sanders and I were also evaluated at R.E.B.T.C. by medical staff.

Colonel Smith, Warden Poret, Warden Dupont, and Major Stewart Hawkins of investigation were notified.

| _Joseph Hooker, Major_ | 7/25/12 | 12:40pm |
|---|---|---|
| Joseph Hooker, Major | Date Completed | Time Completed |

2

Form C-05-001-W-1
15 July 2011

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
UNUSUAL OCCURRENCE REPORT
(Category A, B, C Incidents)

INSTITUTION: Louisiana State Penitentiary

| Name: Herbert Martin | Number: #76859 | Dorm Or Cellblock: Gator 3 Right | Date Of Incident: 7/25/12 | Time Of Incident: 11:05am |
|---|---|---|---|---|
| Location Of Incident: Gator yard pen and Gator walk | | Witnesses: Sgt. D. Adams and Major J. Hooker | | |

## TYPE OF INCIDENT - CHECK APPROPRIATE BOXES

**Category A Incidents:**
- [ ] Escape
- [ ] Death by other than natural causes
  - [ ] Accident
  - [ ] Violence
  - [ ] Suicide
  - [ ] Suspicious
  - [ ] Unknown
  - [ ] Unnatural
  - [ ] Execution
- [ ] Assault resulting in life threatening Injury
  - [ ] Offender on Staff
  - [ ] Offender on Offender
  - [ ] With Weapon
  - [ ] Without Weapon
  - [ ] Staff Injured in Line of Duty
- [ ] Other
  - [ ] Significant Property Damage
  - [ ] Hostage Situation
  - [ ] Major Work Stoppage of Offenders
  - [ ] Employee Work Stoppage
  - [ ] Riot
  - [ ] Natural Disaster
  - [ ] Tact Team/Outside Assistance
  - [ ] Lockdown of all or part of facility
  - [ ] Hunger Strike of Entire Facility or Multiple Units
  - [ ] Large Scale Evacuation
  - [ ] Other - Determined by Unit Head

**Category B Incidents:**
- [ ] Escapee Apprehended
- [ ] Death Due to Natural Causes
  - [ ] Expected
  - [ ] Unexpected
- [ ] Gunshot - Shoot to disable (Class I)
- [ ] Assault with significant injury
  - [ ] Offender on Staff
  - [ ] Offender on Offender
  - [ ] With Weapon
  - [ ] Without Weapon
  - [ ] Attempted Suicide with Significant Injury
  - [ ] Self Mutilation with Significant Injury
- [ ] Hunger Strike – Individual
- [ ] Hunger Strike – Organized
- [ ] Use of Force w/Significant Injury
  - [ ] Lockdown of Limited Number of Offenders
- [ ] Significant Water/Power Outage
- [ ] Property Damage - Limited
- [ ] Evacuation – Limited
- [ ] Other – Employee Arrest
- [ ] Other - Determined by Warden

**Category C Incidents:**
- [ ] Agg. Sex Offense (Offender/Staff)*
- [ ] Agg. Sex Offense (Offender/Offender)*
- [ ] Staff/Civilian Sexual Misconduct*
- [ ] Gunshot - Warning Shot (Class II)
  - [ ] Self Defense - No Human Injury or Death
- [x] Assault With No Significant Injury
  - [x] Offender on Staff
  - [ ] Offender on Offender
  - [ ] With Weapon
  - [ ] Without Weapon
  - [ ] Throwing of Substances
- [x] Use of Force
  - [x] Immediate
  - [ ] Planned
  - [ ] Chemical Agents on Single Offender
  - [ ] Use of Taser
  - [ ] Cell Entry Team (Elec. Shield)
  - [ ] Less Lethal Weapons
  - [ ] Restraints Used (Restraint Chair, 4 Point, etc.)
  - [ ] Staff on Offender
- [ ] Individual Hunger Strike

* Copy to Investigations

## DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

On the above date and approximate time I Capt. Sanders was summoned to Gator unit, on arrival Sgt. Adams

informed me that Offender Herbert Martin had passed out on the yard during his daily yard exercise. Major Hooker and I

John Sanders, Capt.          7/25/12          12:30pm
                             Date Completed    Time Completed

| Name: Herbert Martin | Number: #76859 | Dorm or Cellblock: Gator 3 Right | Date of Incident: 7/25/12 | Time of incident: Approx 11:05 am |
|---|---|---|---|---|
| Location of Incident: Gator yard pen and Gator walk | | Witnesses: Sgt. D. Adams & Major J. Hooker | | |

### (Description of Incident Continued)

proceeded to the yard pen and questioned Offender Martin concerning his condition. Offender Martin then stated that he felt like he had a diabetic seizer. I then gave the offender a direct order to come to the gate and be restrained, Offender Martin complied with the order and was place in a full set of restraints to be removed from the yard. Sgt. Adams then proceeded in opening the yard pen gate and Offender Martin then immediately charged out of the yard pen gate at me attempting to head butt me. I Capt. Sanders, immediately stepped to the side and Offender Martin proceeded through the gate tripping and falling on the yard pen side walk. Major Hooker and I immediately approached Offender Martin in assistance of getting back up on his feet. Offender Martin then became very combative by wrestling and cursing Major Hooker and myself, Major Hooker and I gave Offender Martin several direct verbal orders to stop being combative and stop the wrestling and cursing. Offender Martin flatly refused all orders given at which time Major Hooker and myself had to place arm locks on Offender Martin to gain compliance and get offender Martin to walk to Gar unit to be place in Adm. Seg. Offender Martin was physically escorted to Gar unit and continued to struggle with Major Hooker and myself resisting and attempting to pull away from us. Major Hooker and myself continued to give Offender Martin several orders to stop resisting and he continued, refusing all orders given and had to be escorted in arm locks all the way to Gar unit. Offender Martin was place in the Shower on Gar 1 Right. Major Hooker gave offender Martin, a direct verbal order to give him his Jumpsuit for a shakedown, offender Martin refused, I then exited the Gar one right tier and obtained a can of Phantom Chemical agent and returned to the Gar one right tier. Major Hooker retrieved the chemical agent from me and gave Offender Martin another direct verbal order to give up his jumpsuit for a shakedown, again offender Martin refused. Major Hooker then administered an approximately one second burst of the chemical agent in the Gar one right shower in an effort of bring offender Martin in compliance with the orders that were given to him. Offender Martin, immediately complied with all orders given. Offender Martin was then shookdown given an opportunity to shower, clean jumpsuit and transported to the Robert E. Barrow, Jr. Treatment Center for possible Medical treatment, if needed, resulting from incident. Myself and Major Hooker were evaluated at the Treatment Center also. Colonel Smith, Warden Poret, Warden Dupont, and Major Hawkins of investigations were notified.

John Sanders, Capt

7/25/12
Date Completed

12:30pm
Time Completed

2

Form C-05-001-W-1
15 July 2011

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
UNUSUAL OCCURRENCE REPORT
(Category A, B, C Incidents)

INSTITUTION: Louisiana State Penitentiary

| Name:<br>Herbert Martin | Number:<br>#76859 | Dorm Or Cellblock:<br>Gator 3 Right | Date Of Incident:<br>7/25/12 | Time Of Incident:<br>11:00am |
|---|---|---|---|---|
| Location Of Incident:<br>Gator yard pen and Gator walk | | Witnesses:<br>N/A | | |

### TYPE OF INCIDENT - CHECK APPROPRIATE BOXES

**Category A Incidents:**
- ☐ Escape
- ☐ Death by other than natural causes
  - ☐ Accident
  - ☐ Violence
  - ☐ Suicide
  - ☐ Suspicious
  - ☐ Unknown
  - ☐ Unnatural
  - ☐ Execution
- ☐ Assault resulting in life threatening Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Staff Injured in Line of Duty
- ☐ Other
  - ☐ Significant Property Damage
  - ☐ Hostage Situation
  - ☐ Major Work Stoppage of Offenders
  - ☐ Employee Work Stoppage
  - ☐ Riot
  - ☐ Natural Disaster
  - ☐ Tact Team/Outside Assistance
  - ☐ Lockdown of all or part of facility
  - ☐ Hunger Strike of Entire Facility or Multiple Units
  - ☐ Large Scale Evacuation
  - ☐ Other - Determined by Unit Head

**Category B Incidents:**
- ☐ Escapee Apprehended
- ☐ Death Due to Natural Causes
  - ☐ Expected
  - ☐ Unexpected
- ☐ Gunshot - Shoot to disable (Class I)
- ☐ Assault with significant injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Attempted Suicide with Significant Injury
  - ☐ Self Mutilation with Significant Injury
- ☐ Hunger Strike – Individual
- ☐ Hunger Strike – Organized
- ☐ Use of Force w/Significant Injury
  - ☐ Lockdown of Limited Number of Offenders
- ☐ Significant Water/Power Outage
- ☐ Property Damage - Limited
- ☐ Evacuation – Limited
- ☐ Other – Employee Arrest
- ☐ Other - Determined by Warden

**Category C Incidents:**
- ☐ Agg. Sex Offense (Offender/Staff)*
- ☐ Agg. Sex Offense (Offender/Offender)*
- ☐ Staff/Civilian Sexual Misconduct*
- ☐ Gunshot - Warning Shot (Class II)
  - ☐ Self Defense - No Human Injury or Death
- ☒ Assault With No Significant Injury
  - ☒ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Throwing of Substances
- ☐ Use of Force
  - ☐ Immediate
  - ☐ Planned
  - ☐ Chemical Agents on Single Offender
  - ☐ Use of Taser
  - ☐ Cell Entry Team (Elec. Shield)
  - ☐ Less Lethal Weapons
  - ☐ Restraints Used (Restraint Chair, 4 Point, etc.)
  - ☐ Staff on Offender
- ☐ Individual Hunger Strike

\* Copy to Investigations

### DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

On the above date and approximate time Offender Herbert Martin who was in a yard pen on Gator was lying on the

Ground and he told me that he was having a diabetic emergency. I then notified Capt. Sanders who arrived shortly after

| Dwayne Adams Sgt. | 7/25/12<br>Date Completed | 11:35AM<br>Time Completed |
|---|---|---|

| Name; | Number: | Dorm or Cellblock: | Date of incident: | Time of Incident: |
|---|---|---|---|---|
| Herbert Martin | #76859 | Gator 3 Right | 7/25/12 | Approx 11:00 am |

| Location of Incident: | Witnesses: |
|---|---|
| Gator yard pen and Gator walk | N/A |

### (Description of Incident Continued)

along with Major Hooker and took control of the situation.

Sgt. Dwayne Adams

7/25/12
Date Completed

11:35am
Time Completed

2

12/04/2012  14:31    2256552290                                    PAGE  01/03

Confrontation with Scarity

## ROBERT E. BARROW, JR. TREATMENT CENTER
### ACCIDENT / INJURY REPORT
#### VITAL STATISTICS

DATE: 7, 25 12                                          TIME SEEN: 11:40

NAME: Herbert Martin   DOC#: 76859   AGE: 58   RACE: B

LIVING QUARTERS: J Gator   JOB ASSIGNMENT: L/D   LAST TETANUS:

MEDICATIONS: Losartan Coreg Zocor Ventolin Tolnaftate Ventolin Narnase Dilantin Terbutaline Insulin Tegretol    ALLERGIES: ASA

| DATE OF ACCIDENT: | | TIME OF ACCIDENT: | | | | ACCIDENT LOCATION: | |
|---|---|---|---|---|---|---|---|
| TIME: 11:40 | B/P: 24/88 | PULSE: 10 | RESP: 6 | LOC: A&O | TEMP: 98³ | BS/SpO2: | |
| TIME: 1:30 | B/P: 78/86 | PULSE: 113 | RESP: U | LOC: U | TEMP: | BS/SpO2: | |
| TIME: 3:10 | B/P: 131/84 | PULSE: 98 | RESP: 14 | LOC: U | TEMP: | BS/SpO2: | |

#### CHIEF COMPLAINT AND INITIAL ASSESSMENT

CHIEF COMPLAINT, HISTORY AND ASSESSMENT: Confrontation & Gassed
58 y/o BM ambulatory to ATU c/o Head pain and burning to eyes. PERRL abrasion noted to ® 1st & 2nd knuckles ® anterior ankle and ℗ mouth. BBS = CTA ® R/F. Pt removed Dental plates = some bleeding. No other injuries noted.

MEDIC SIGNATURE: _____ EMT-P

#### PHYSICIAN ASSESSMENT AND TREATMENT

☐ CATEGORY A            ☐ CATEGORY B            ☐ CATEGORY C

***SEE DEFINITIONS ON THE BACK OF THIS SHEET FOR EXPLANATION OF CATEGORY***

v/o follins:
X-ray skull - slp sm ✓
pictures taken
Motrin 800mg po stat @ 1300

58 y/o BM c/o minor abrasions to Pt caud - no serious injury
X Ray skull f/u c radiolog rept
ambulatory back
Flu @ fasten

☐ Duty Status
☐ Diet

☐ Appointment
☐ Dressing Change

PHYSICIAN SIGNATURE: _____

| TIME LEFT: 1310 | TRANSPORTATION: ambulatory | DESTINATION: RTQ |
|---|---|---|
| LSP-TC 07   Rev. 11/2006 | ACCIDENT/INJURY REPORT | PAGE ___ OF ___ |



Abrusions

BAEK          PALM

Both Approx
3cm in diameter
active bleeding

Approx 1cm
in diameter
active bleeding

Herbert Martin
76859

H. martin

OFFICER NAME: _J. Cain    C. Gendeau_    SHIFT _C_

DATE: _7/25/10_    _1/10, 8/11, 8/10, 1/11 w/ Hw_

| TIME | OFFICER ENTRY |
|---|---|
| 405/A | *illegible* |
| 435/A | *illegible* |
| 454/A | 3 Remade Orderies county *illegible* Utensils |
| 454/A | *illegible* 3 Bag orderies |

Dwayne Adams    B-Team
Damon Turner    7-25-12

526I. Relived C-Team officer of all duties and equipment including ① berper ② shreen ② cell keys ② org. key J122 #1 #123 #1 ① yard key J125 #1 ① boller room key J121 #1 ① thans ① lift chear fir *illegible* with no *illegible* ① first aid kit *illegible* cell set ① weather *illegible* ② keys *illegible* ① door ① door chair *illegible* both ① have *illegible* and *illegible* post order.

0526 *illegible* Count *illegible*

Team Pill Call *illegible*

*illegible*

736 *illegible* Med *illegible* C11/be.

P29 exchanged task R. Dorrell #48240? on out

*illegible*

902 *illegible* Minute Oliver Howard #349325 on unit O

912 *illegible*

9:30 Sgt S'Amy on unit with Canteen.

10:18 *illegible*

10:58 Pill Call *illegible*

1:15 Chear *illegible* on unit with 3 boot utosils Food Temp 130° & 253 entre

## CAMP J SHOWER / YARD ROSTER

| UNIT G | LEVEL N | LEFT TIER 1/12 | Yards | | Showers | | Tier Hour | | DATE 7/05/10 | |
|---|---|---|---|---|---|---|---|---|---|---|
| B/W | Cell | Offender Name | Number | On | Off | In | Out | On | Off | |
| B | 2 | Andy Mutere | 317511 | R4 | GRUS | 10⁰⁰ | 10¹⁵ | N | A | |
| B | 3 | Jerold Jenkis | 457440 | RS | 923₂ | 930 | 945 | | | |
| B | 4 | Harold Herbert | 857254 | Run | | 119 | 120 | | | |
| B | 5 | Perry Hawthorne | 34860 | 724d | 821 | 1215 | 1230 | | | |
| B | 6 | Dwayne Ricord | 537806 | R714S | | | | | | |
| W | 7 | Basil McCloud | 13147 | R12N | 215 | | | N | A | |
| B | 8 | Edward Price | 484315 | R1745 | | 6:30pm | 6:45pm | | | |
| B | 9 | Charles Rotell | 23052 | R17US | | 6:45pm | 7:00pm | | | |
| B | 10 | David Williams | 33346d | 745 | 813 | 820 | 835 | | | |
| B | 11 | Willie Jones | 513576 | R17US | | 7:00pm | 7:15pm | | | |
| B | 12 | Eric Williams | 478201 | Return | | 7:15pm | 7:30pm | | | |
| B | 13 | Daryl Sylvester | 54085 | 551 | 75 | 1150 | 1210 | | | |
| B | 14 | Arthur Johnson | 535268 | Return | | 7:30pm | 7:45pm | N | A | Court order Ready for 4:00 A.M |

| UNIT | LEVEL 1 | RIGHT TIER 2/10 | Yards | | Showers | | Tier Hour | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| B/W | CELL | Offender Name | Number | On | Off | In | Out | On | Off | |
| B | 2 | Herbert Mathis | 176854 | 104 | 114 | Room Sy | | N | A | |
| B | 3 | Danie Johnson | 10258 | Complete | | 6:30pm | 6:45pm | | | |
| B | 4 | David Lopell | 28018 | Tailor | | 6:45pm | 7:00pm | | | |
| B | 5 | James Courtney | 508918 | Infirm | | 7:00pm | 7:15pm | | | |
| W | 6 | Charles Mahoney | 557858 | Sick | | 7:15pm | 7:30pm | | | |
| D | 7 | Micheal Stewart | 11985 | Complete | | 7:30pm | 7:45pm | | | |
| B | 8 | Abdul Thomas | 118017 | Ready | | 104 | 737 | N | A | |
| B | 9 | Tremaine Tyler | 421757 | Ready | | | | | | |
| W | 10 | Henry Degan | 96858 | Complete | | R17US | | | | |
| D | 11 | Irene Wilson | 46845 | Left | | 1240 | 104 | | | |
| B | 12 | Joey Smith | 118087 | Complete | | 1130 | 1240 | | | |
| B | 13 | Ronald Boone | 42643 | Infirm | | 1215 | 1257 | | | |
| B | 14 | Darin Smith | 43802 | Complete | | 1207 | 1215 | N | A | |

| Day Shift Officer | Dawn Dixon | Night Shift Officer | Jeff Lunny — 261230 | Time Shower Started | | Ended | 7:45 PM |
|---|---|---|---|---|---|---|---|

Capt Wilson
11/2/06

282

OFFICER NAME: _Doug Dunn / Sgt D. Tum_    SHIFT _B_

DATE: _7-25-12_    ¹/12, ²/10, ²/10, ¹/12 OT

| TIME | OFFICER ENTRY |
|------|---------------|
| 11:40a | Made rounds all secur |
| 12:14 | Made rounds all 3a |
| | I'D room cooking Kep and Dorm |
| | |
| 1:24pm | Made rounds all |
| 2:14 pm | Made rounds all 3a |
| 2:59 | Chow count 3a ¹/12, ²/10, ²/10, ¹/12, - 1 ½3/1 |
| 3:05 | Made rounds all sec |
| 3:49 | Show card on unit with 3 bas |
| | |
| 4:01pm | Pill call J Paulina |
| | |
| 5:00 | Made rounds all secur and count ¹/12 ²/10 ²/10 |
| | ¹/12 OT |

283

OFFICER NAME: _Sgt. J. Smith_    Gator "3"  _M.Std. C. Hollins_  Gator "4"    SHIFT _D-Team_

DATE: _7/25/12_    1/2, 2/10, 2/10, 1/2, 1 Krs.

| TIME | OFFICER ENTRY |
|------|---------------|
| 5:30 Pm | Relieved B-Team officers of all duties and responsability of Gator 3&4. Recieved (1) keeper #12 (1) sheets (2) cloor keys (2) unit keys J59 /J123 (ill)(65) J58 J122 (ill)(B5) (sealed unopened first aid kit (1) fully charged fire extinguisher with Pins (7) wrist chains (7) shackels (7) black boxs (7) hand cuffs (1) log book (2) shower registers (6) bed books (2) evacuation books (1) Transfistler #22225 (1) post orders (1) posted policys. both officers read and understand posted orders and posted policys x Sgt. Smith... Maderounds on unit. all secure back door secure Pipe chase secure 1/2, 2/10, 2/10, 1/2, 1 Krs. keeper check good. count on Gator 3&4 unit good with E-building. |
| 6:03 Pm | Made Rounds all secure 1/2, 2/10, 2/10, 1/2, 1 Krs. count good with E-building. |
| 6:34 Pm | Made Rounds. NS 1/2, 2/11, 2/10, 1/2, 1 Krs. [handwritten entries illegible] |
| 7:30 Pm | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. |
| 8:00 Pm | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. count good. |
| 8:15 Pm | (1) bass ordery to feed for Ramadan. |
| 8:30 Pm | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs |
| 9:00 Pm | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs count good. |
| 7:30 Pm | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. |
| 10:00 Pm | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs Barber on tier to cut court order hair. Anthony. Johnson 526268 for court trip. count good |
| 10:30 Pm | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. Barber left Gator 3&4 unit. |
| 11:00 Pm | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. count good with E-building. ordery on Gator unit to clean. |
| 11:30 Pm | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. |
| 11:45 Pm | Tier walker exchange out Chris Richardson #528720 to work Gator 3 right tier. |
| 12:00 Am 7/26/12 | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. count good. |
| 12:30 Am | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. |
| 1:00 Am | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. |
| 1:30 Am | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. |
| 2:00 Am | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. [handwritten signature entries] |
| 2:45 Am | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. |
| 3:15 Am | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. |
| 3:45 Am | Made Rounds NS 1/2, 2/10, 2/10, 1/2, 1 Krs. offender Anthony. Johnson #523248 left Gator 3&4 for court trip restraints left Gator 3&4 in consist of black box ABB 10 / Hand cuffs ABB4 / Padlock 8536 / Shackell J200, all belong on Gator 3&4 unit. |

284

OFFICER NAME: _____    SHIFT: D-Team

DATE: 7-26-12

| TIME | OFFICER ENTRY |
|---|---|
| 4:10 Am | Officer Anthony Johnson off cook of Sector 3 Left 1/11, 3/10, 3/10, 1/12, 1/5tw. |
| 4:15 Am | Made Rounds Abc 1/11, 3/10, 3/10, 1/12, 1/5tw. |
| 4:35 Am | 3 bass offered off on cator 3 & 4 unit 100 feed (o Ranger. |
| 4:50 Am | Made Rounds Abc 1/11, 3/10, 3/10, 1/12, 1/5tw. |
| 5:28 Am | Relieved of all duties at Sector 3 & 4 by B-team officers |
| | |
| | Dwayne Adams          B-Team |
| | Damon Turner          7-26-12 |
| | |
| 524 | Relieved D-Team officer of all duties and equipment including ... |
| 0540 | ... Capt. ... 93 |
| 54 | ... |
| 6am | Pill Call ... |
| 730 | ... |
| 738 | Librarian Robert ... on unit & control |
| | ... |
| | ... |
| 9:40 am | D. Carter ... |
| 10 | ... 1/11, 1/10, 4/10, 1/2 DC |
| 1006 | ... R. Glover ... on unit & control |
| 10:30 | Chow cart on unit with 3 ... Food Temp ... 162° Food Temp End 160° |

014/cp5 2012-3321 RECEIVE

OCT 29 2012

Legal Programs Departr

THIS IS A REQUEST FOR ADMINISTRATIVE REMEDY (ARP)

THIS IS A COMPLAINT AGAINST MAJOR JOSEPH HOOKER

TO:     Warden Burl Cain
        Louisiana State Penitentiary

FROM:   Herbert Martin, ___ __76859__ __
        Name            DOC#

Gar_2___Right; *CELL #3*.
Location

RECEIV'

OCT 29 ___

WARDEN'S OFFICE

## COMPLAINT

On July 25, 2012, I was housed on Gator 3-R-2. Approximately 10:15 AM, Sergeant Adam put me on the exercise yard for 1-hour. When it was time to come off the yard I was sitting up against the fence and Sgt. Adam stated...... time to come in. I told Sgt. Adam to give me a minute to pull myself together, I was dizzy, I feel like I'm about to pass out, it was very hot that day. I was still sitting, holding on to the fence trying to get up, but couldn't. At that time Sgt. Adam summon for help, minutes later Maj. Hookers, Capt. Sanders and Sgt. Adams committed assault and battery on me.

## GENERAL ALLEGATIONS

1.

On July 25, 2012 Maj. Hooker were acting under color of state law at all material times herein.

2.

Maj Hooker and Capt. Sanders both was beating and kicking me. Maj. Hooker also slammed my head into the concrete, then began punching me in the head and face while Capt. Sanders kick me in the back, ribs and other body parts. I was fully restrained during these time.

3.

These assaults continued all the way to Gar-1-R, where I was sprayed with mace.

4.

Thereafter, in the lobby they started beating me again. I was down on the floor Maj. Hooker said "use no latch." they help me up then passed my head into the wall of the storage. I fell to the floor and me, starting beating me again, then Maj. Hooker kicked my teeth out.

5.

I was finally taken to the hospital (see record) where I was threaten by the doctor with a write up.

6.

Each officer displayed a callous indifference to the plaintiff's federally protected rights.

7.

Plaintiff required medical attention for the injuries sustained because of the violation of his rights for the various injuries

8.

The action of the defendant(s) were intended to cause pain, damages and sufferings.

9.

The use of force was unnecessary and excessive to any need and/or there was no need for use of force under the 8th Amendment and the circumstance presented

10.

La. R.S. 15: 829 expressly prohibits the use of corporal punishment

11.

The actions of defendant(s) constitute corporal punishment, unnecessary and/or excessive use of force in violation of state and federal law and policies and procedures in place and established by the State of Louisiana and Department of Corrections

12.

It was not objectively reasonable to use force on inmate who was restrained and not resisting.

13.

Defendants acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate plaintiff's constitutional rights.

## RELIEF

## VIOLATION OF CIVIL RIGHTS

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. Under the color of State and Local Law, all defendants be held accountable for their actions and after a thorough investigation that they be charge with malfeasance of office and the District Attorney of the 20th Judicial District be notified.

Done and signed this _22_ day of _October_, 2012.

Respectfully submitted by:

*Herbert D. Martin*

*Cancy* - J. GAR (2.) - RIGHT; CELL # 3.

| | CHAPTER: | DIRECTIVE NO. |
|---|---|---|
| June 27, 2011 [State of Louisiana seal] LOUISIANA STATE PENITENTIARY | SECURITY AND CONTROL | 09.002 |
| | SUBJECT: USE OF FORCE | ACA STANDARD: 4-4084, 4-4084-1, 4-4090-92, 4-4173, 4-4199, 4-4200-04, 4-4206, 4-4281, 4-4399, 1-CTA-3A-16, 1-CTA-3A-17, -CTA-3A-19, 1-CTA-3A-20, 1-CTA-3A-23, 1-CTA-3A-24, 1-CTA-3B-08 |
| | REFERENCE: Department Regulation Nos. C-01-008, C-02-006, C-03-003; Penitentiary Directive Nos. 04.003, 09.007/B, 09.017, 09.021, 09.052, 13.019, 13.023, 13.026 | |

PURPOSE:  To provide guidelines to govern the use of force and its limitations and to describe prohibited activities.  This policy is designed to assist employees in acting reasonably when confronted with situations requiring the use of force.

APPLICABILITY:  All Louisiana State Penitentiary employees.

POLICY:  It is the policy of Louisiana State Penitentiary that all reasonable steps be taken to minimize situations requiring the use of force by staff against offenders and to minimize the amount of force used in those situations.  It is recognized, however, that force may be necessary to accomplish the mission and goals of the Department to provide for public safety, staff and offender safety, and the maintenance of stability within the institution.  Employees will be provided with proper training and guidance in the use of force applications.

Procedures governing the use of force include both annual qualifications for staff likely to engage in activity that may involve the use of reasonable force and necessary certification under applicable regulating statutes for employees issued firearms or other security equipment.  Security equipment utilized in use of force applications shall be in accordance with Penitentiary Directive No. 09.021 and Department Regulation No. C-01-008 and C-02-006.  Only approved state-issued equipment will be used in the performance of official duties.

It is further the policy of Louisiana State Penitentiary that lethal weapons, less lethal weapons, electronic muscular disruption devices and restraints be used only by employees specifically trained in their use and when all available less drastic measures fail to accomplish control in handling group disturbances and subduing individuals.  Said force employed shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.

DEFINITIONS:

Electronic Muscular Disruption (EMD) Device:  A device that utilizes electro-muscular disruption technology that disrupts the body's ability to communicate messages from the brain to the muscles, causing motor skill dysfunction. For the purpose of this regulation, EMD's

Penitentiary Directive No. 09.002
June 27, 2011
Page 2 of 18

include only the electronic capture shield and electronic restraint belt system. (The TASER® is also considered an EMD; however, refer to Department Regulation No. C-02-006A "Use of TASER®" for specific procedures regarding use of the TASER®.)

Excessive Force:  Force is excessive when the resulting application of force is inappropriate to the circumstances either during an incident or in the aftermath of an incident.

Force:  The application of a technique, action or device to compel a change in the actions of another person, which usually will result in compliance with a desired behavior, submission to authority or to deescalate a threatening behavior.

Force Continuum:  Broad categories of force, in identifiable escalating/de-escalating stages of intensity, in response to an individual's actions. The categories are commonly identified as officer presence, verbal direction or command, soft empty-hand control, hand-held chemical spray or EMD devices, hard empty-hand control, batons and firearms. An individual's actions may be defined in broad categories including full compliance to commands, verbal uncooperativeness, passive resistance, active resistance, active aggression and aggravated active aggression (lethal force.)

Less Lethal Force:  Defensive techniques or weapons that do not normally nor are intended, when properly applied, to cause death or serious bodily injury.

Less Lethal Weapons:  Weapons designed to reduce the potential of causing serious physical injury or death. Use is restricted to situations where higher levels of force are unnecessary and lesser levels are inappropriate or ineffective. Less lethal weapons include:

1)    Chemical Agents and Munitions: Tear gas, mace spray or irritant dusts are chemical agents that cause irritation to the eyes, skin or respiratory system. Chemicals may be administered directly through a hand-held aerosol spray or at longer ranges by being fired or dispersed out of a launcher.

2)    Intermediate/Impact Weapons: Examples include batons and shields which are available options in the force continuum.

Lethal Force:  Any use of force reasonably calculated in the manner used to produce death or serious bodily injury.

Lethal Weapons:  Any weapon reasonably calculated in the manner used, to produce death or serious bodily injury.

Necessary Force:  Force used when all other options have been exhausted, unavailable or are not feasible.

Penitentiary Directive No. 09.002
June 27, 2011
Page 3 of 18

Reasonable Force: Only that force which is reasonable and necessary under the particular circumstances to protect the public, staff, offenders, or others from bodily injury or only after other reasonable alternatives have been exhausted or it is determined that such alternative action(s) would be ineffective under the circumstances.

Restraints: Mechanical, electronic or other devices used in the force continuum to aid in the restriction of an individual's bodily movement for security purposes. (See Health Care Policy No. HC-29 "Utilization of Restraints for Medical and Mental Health Management Orders" for information concerning the use of restraints for medical and mental health purposes.)

Severe Mental Health Illness: A chronic or acute mental illness that impairs the offender's ability to maintain safety of self and others and maintain activities of daily functioning.

Severely Developmentally Delayed: An intellectual disability that impairs the offender's ability to provide self care or maintain their safety. In addition, this type of impairment may render the offender vulnerable to victimization by others.

See the attached Weapons List for items/devices/weapons authorized for use at LSP.

PROCEDURE:

A.    USE OF FORCE GUIDELINES

    1.    General Considerations:

        a.    The use of any type of force for punishment or reprisal is strictly prohibited.

        b.    Whenever possible, the determination to use force shall be made by the highest ranking supervisor in the immediate area.

        c.    Whenever possible, force shall not be used against offenders with severe mental health illness (SMHI) or who are severely developmentally delayed (SDD) before appropriate Medical or Mental Health personnel can be called to the scene. The Mental Health Director shall be responsible for maintaining a list of offenders with SMHI and SDD which shall be updated on a weekly basis or more often, if needed. This list shall be easily accessible to supervisory staff for use when needed.

        d.    Reasonable steps shall be taken to minimize the amount of force used.

Penitentiary Directive No. 09.002
June 27, 2011
Page 4 of 18

       e.      Employees will not carry security equipment on their person unless authorized by the Warden or his designee. Restraining devices may be carried by supervisory personnel while on duty. Handcuffs must be worn in an approved attachable handcuff case.

       f.      Individual units may maintain small amounts of security equipment in areas inaccessible to offenders.

       g.      Assigned trip officers shall be authorized to use chemical agents and the ASP in order to prevent an escape or to stop a disturbance while escorting offenders outside institutional grounds.

       h.      With the exception of extreme emergencies, firearms are not permitted inside a secure compound or area unless authorized by the Warden.

2.    Elements to Consider in the Review of Use of Force Incidents

       a.      The extent of the injury suffered.

       b.      The need for the application of force.

       c.      The relationship between the need and the amount of force used.

       d.      The threat reasonably perceived by the responsible supervisor

       e.      Any efforts made to temper the severity of a forceful response.

3.    For Use of Less Lethal Force:

       a.      Less lethal force is force which normally causes neither death nor serious bodily injury.

       b.      Physical force, chemical agents, EMDs, intermediate/impact weapons, or less lethal ammunitions and devices, and canine units may be used only in the following instances:

            1)     Prior to the use of lethal force:

                  a)    To prevent the commission of a felony, including escape.

                  b)    To prevent an act which could result in death or serious bodily injury to one's self or to another person.

Penitentiary Directive No. 09.002
June 27, 2011
Page 5 of 18

    2)    To defend one's self or others against any physical assault.

    3)    To gain offender compliance when other less lethal force options within the force continuum have failed, are clearly inappropriate and/or ineffective.

    4)    To prevent commission of a misdemeanor.

    5)    To prevent serious damage to property.

    6)    To enforce institutional rules.

    7)    To prevent or quell a riot.

c.    The amount of physical force applied shall be appropriate to the amount of resistance. Once compliance starts, escalation of force stops.

4.    For Use of Lethal Force:

a.    Lethal force is force that in the manner used, is capable of causing death or serious physical injury.

b.    It may be used only as a last resort and then only in the following instances:

    1)    To prevent the commission of a felony, including escape.

    2)    To prevent an act which could result in death or severe bodily harm to one's self or another person.

5.    For use of the following:

a.    Mechanical and Flex Cuff Restraints (see Penitentiary Directive No. 09.007/B).

b.    Extreme Restraints (see Penitentiary Directive No. 10.002).

c.    Chemical Agents, Intermediate/Impact Weapons and Other Less Lethal Weapons (see Section E below).

d.    Electronic Muscular Disruption Devices (see Section F below).

Penitentiary Directive No. 09.002
June 27, 2011
Page 6 of 18

      e.     Lethal Weapons (see Section B below).

      f.     Canine Units (see Section G below).

**B.**    **USE OF LETHAL WEAPONS**

    1.    All staff, when assigned weapons, shall use the following procedure in the prevention of escapes and in situations described in Section A, 4.

    2.    Lethal weapons should be utilized only as a last resort and only as authorized herein.

    3.    In the utilization of firearms, the following procedures shall be followed:

        a.    A verbal warning to cease actions (if feasible). In the case of an escape, this should occur when an unauthorized offender(s) gets within 10 feet of a perimeter fence.

        b.    Warning shot (if feasible) to ensure that the offender is absolutely aware of the seriousness and probable consequences of his actions.

            IMPORTANT NOTE: The only exception of the provisions in Section B, 3, a and b would be when the circumstances require immediate action to protect life or stop an escape in progress where a verbal warning or warning shot is not practical. Warning shots may not be fired where it is foreseeable that a member of the public may be endangered.

        c.    Shoot to disable (render offender incapable of continuing with action; which prompts the use of lethal force).

    4.    Officers should be aware of escape attempts via aircraft.

        a.    Officers should contact the Control Center of the approach of low flying or unauthorized aircraft.

        b.    The Control Center shall advise appropriate tower officers of any expected aircraft.

        c.    If it is suspected an escape attempt is being made by an aircraft, the officer should gather as much information as possible as to the craft's identifying markings, number of occupants and possible number of offenders involved.

Penitentiary Directive No. 09.002
June 27, 2011
Page 7 of 18

    d.     If an officer is fired upon by the aircraft or if the occupants are in the act of committing a felony, the officer may fire to protect himself, attempt to disable the craft, and to prevent its departure.

    e.     The Control Center and highest ranking officer in the area shall notify the appropriate authorities of unapproved aircraft as soon as possible.

5.    After Use

    a.     When a weapon has been utilized, the affected individual(s) that suffered the wound shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.

    b.     Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

    c.     In accordance with Department Regulation No. C-01-008 "Firearms and Weaponry Training," a Shooting Review Panel appointed by the Secretary shall review the circumstances surrounding each incident where an offender or other person is shot by departmental staff and shall make recommendations as necessary. The meetings shall occur at least quarterly but may occur on an incident-by-incident basis at the discretion of the Chief of Operations.

    d.     All instances in which lethal weapons are used shall be reported in accordance with Section F of this regulation.

6.    Armed Duty Post

    a.     With the exception of those offenders being transported outside the institution, armed duty posts shall be positioned in areas inaccessible to offenders. Armed guards shall position themselves at a minimum of seventy-five (75) feet from all offenders.

    b.     Armed escorts should exercise extreme caution during any movement of offenders in the course of outside trips and farm line operations. Mass movement of offenders from a security perimeter to another area requires armed escorts during hours of darkness or at time designated by the Warden.

    c.     Offenders are not allowed in the Armory or in areas where officers receive and/or return security equipment.

Penitentiary Directive No. 09.002
June 27, 2011
Page 8 of 18

C.   USE OF CHEMICAL AGENTS, INTERMEDIATE/IMPACT WEAPONS, EMD's AND OTHER LESS LETHAL WEAPONS

1.   Chemical agents, intermediate/impact weapons, or less lethal munitions and devices shall not be used as punishment under any circumstances and may be used against an offender or a group of offenders only in the following circumstances:

   a.   To quell a riot and/or prevent loss of life, serious injury to person(s), and/or extensive destruction of property,

   b.   To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution, or

   c.   To regain control of the institution or a part of it.

2.   The use of chemical agents, intermediate/impact weapons or less lethal munitions and devices is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

3.   A determination for corporate or mass use of chemical agents, intermediate/impact weapons or less lethal munitions and devices shall be made by the Warden or designee. (who should be the highest ranking supervisor on duty in the immediate area where the incident is occurring).

   If the electronic capture shield (EMD) is to be used, the highest ranking official on duty in the immediate area where the incident is occurring will designate the officer who will use the shield. Only officers who have been trained in the proper use of the electronic capture shield may be designated to use the shield.

4.   Chemical agents, intermediate/impact weapons, EMD's or less lethal munitions and devices shall not:

   a.   Be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination for use under these circumstances, or against an individual offender shall be made by the highest ranking supervisor on duty in the area.

Penitentiary Directive No. 09.002
June 27, 2011
Page 10 of 18

7.    If these efforts fail to control the situation and the offender(s) continues the disruptive behavior which, in the opinion of the highest ranking security supervisor on duty in the immediate area where the incident is occurring, may lead to loss of life, serious injury to person(s), extensive destruction of property, or a serious situation which may jeopardize the safety, security and good order of the facility, the supervisor may then use only the minimum amount chemical agent necessary to subdue the offender(s).

8.    If the highest ranking security supervisor on duty in the immediate area where the incident is occurring determines that chemical agent will be used, he will personally apply the chemical agent.  Only the minimum amount necessary to control the situation will be used.  It is the supervisor's responsibility to ensure that the chemical agent is not used as a form of punishment or on an offender(s) who is physically incapable of responding to commands being given to him.

9.    The offender(s) will then be given orders to come to the bars to be handcuffed.  If the offender complies, appropriate restraints will be applied; he will be removed from the cell and offered a change of clothing and to shower.  The offender(s) and affected staff will then be examined and treated, per established protocols, by an EMT or other qualified health care provider.

10.    In the event that the use of chemical agent has no effect in controlling the situation as described above, the Control Center will be notified to assemble a cell entry team to subdue the offender(s).

11.    The cell entry team leader will verbally inform the offender that the EMD will be used to subdue him.

12.    The cell entry team leader or another trained officer designated by the team leader will arc/test the EMD in the offender's presence to show that electricity is being used. The team leader will again give the offender the opportunity to come to the bars to be restrained.

13.    If the offender still refuses to come to the bars to be restrained, the team leader in charge of the situation will utilize the EMD and riot helmet, or designate another qualified officer to do the same. The on/off switch will be placed in the "on" position, and the cell entry team will enter the cell.

14.    After the team has entered the cell, the officer utilizing the EMD and riot helmet will approach the offender and place the shield upon him.  <u>Always use the minimum force necessary to control the situation.</u>

Penitentiary Directive No. 09.002
June 27, 2011
Page 9 of 18

b. Be used on those offenders who are incapable of responding to the commands and orders being given to them by staff (e.g., during epileptic seizures, etc.).

c. Whenever possible under prevailing circumstances, be used against an offender who is assigned to a Mental Health Treatment Unit until a qualified medical or mental health worker is present and attempted to control the situation, unless it is necessary to prevent loss of life, serious injury to person(s), or extensive property damage.

   1) The medical or mental health worker must respond, assess, and attempt an intervention prior to the use of a chemical agent or the Cell Entry Team.

   2) If the intervention is not successful, the medical or mental health worker may authorize the use of chemical agents or the Cell Entry Team.

   3) In such cases the medical or mental health worker will remain present at the head of the tier to monitor the offender's behavior during the use of chemical agents or Cell Entry Team.

   4) The medical or mental health worker will document the assessment and the success or failure of the intervention, time of incident, and follow-up treatment.

   5) When immediate action is required, consultation between Mental Health Clinician and the Medical Director will occur as soon as reasonably possible but no later than 72 hours to review the appropriateness of the action.

5. When an offender or offenders are creating a disturbance, the officer on duty will attempt to handle the problem by ordering the offender(s) to cease the disturbance. If the offender(s) refuses and continues the disruptive behavior, the officer will then call his supervisor.

6. When the supervisor arrives, he will take charge of the situation and then order the offender(s) to cease the disturbance. If the offender(s) refuses the order, he will then order the offender(s) to come to the bars so that he may be properly restrained and removed from his cell to be placed in administrative segregation or the appropriate area. This procedure also applies to offenders already housed in administrative segregation.

Penitentiary Directive No. 09.002
June 27, 2011
Page 11 of 18

15.    After the burst of electricity from the EMD has been administered, maintain cover with the shield. Have the offender move or physically move the offender to be restrained. If the offender physically resists, another burst of electricity may be applied with the electronic device. While the offender is being restrained, maintain cover with the shield. This procedure may be repeated only if necessary. The offender(s) will then be examined and treated, per established protocols, by an EMT or other qualified health care provider. Only minimum force will be used.

16.    The only person authorized to use chemical agent or to order the cell to be entered to subdue an offender(s) is the highest ranking security supervisor on duty in the immediate area where the incident is occurring. Under no circumstances will an officer or officers use chemical agents, intermediate/impact weapons, or less lethal munitions and devices to subdue an offender(s) without the supervisor being present.

17.    ASP

a.    On approval by the Warden, security supervisors of segregated areas shall be authorized to use the ASP (expandable tactical baton) in the performance of assigned duties. The ASP shall be stored in a proper storage compartment until such time as use is required. The ASP shall be inventoried.

b.    Trip officers shall be authorized to carry the ASP while escorting offenders outside the institution. The ASP shall be signed out from the Armory as part of regular security equipment issue.

c.    Only those staff who have been properly trained and certified shall be permitted to use the ASP.

18.    After Use

1.    When chemical agents, intermediate/impact weapons or less lethal munitions and devices have been used

a.    Affected individuals will be permitted to wash their face, eyes or other exposed skin areas, as soon as possible after the situation has been brought under control, and the individual will be examined by qualified medical personnel.

b.    Staff may be referred to medical personnel as appropriate based on the circumstances.

Penitentiary Directive No. 09.002
June 27, 2011
Page 12 of 18

    2.    All instances in which chemical agents, intermediate/impact weapons or less lethal munitions or devices are used shall be reported in accordance with Section F.

D.    USE OF ELECTRONIC MUSCULAR DISRUPTION DEVICES (EMD's)

    1.    For the purpose of this Section, EMD's shall include only the electronic capture shield and electronic restraint belt system. (Refer to Department Regulation No. C-02-006A "Use of Taser®" for specific procedures regarding use of the Taser®.)

        The use of the electronic capture shield is authorized for use at LSP as described in Section C, 10-16.

    2.    EMD's shall not:

        a.    Be used as punishment under any circumstances;

        b.    Be used continuously and unjustifiably used against an offender;

        c.    Be used on those offenders who are incapable of responding to the commands and orders being given to them by the staff (e.g. during epileptic seizures, etc.)

        d.    Be used against any individual known to have been exposed or subjected to chemical agents containing flammable substances or any other product(s) using a potentially flammable propellant until a minimum of five minutes has passed allowing for evaporation of the propellant or unless the individual has completed the de-contamination process required after such exposure;

        e.    Be used around known sources of flammable gases, liquids or solids;

        f.    Whenever possible under prevailing circumstances, be used against offenders assigned to an area designated as a Mental Health Treatment Unit until a qualified medical or mental health worker is present and has attempted to control the situation unless it is necessary to prevent loss of life, serious injury to person(s) or extensive property damage.

    3.    EMD's may be used against an offender or a group of offenders only in the following circumstances:

        a.    To quell a riot and/or prevent loss of life, serious injury to person(s) and/or extensive destruction of property;

Penitentiary Directive No. 09.002
June 27, 2011
Page 13 of 18

b.    To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution; or

c.    To regain control of the institution or part of it.

4.    The use of EMD's is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

5.    Electronic Capture Shield

The electronic capture shield shall not be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination to use the electronic capture shield under these circumstances, or against an individual offender, shall be made by the highest ranking supervisor on duty in the area where the incident is occurring.

6.    Electronic Restraint Belt

a.    Use of the electronic restraint belt shall be made by a designated supervisor and may be used in accordance with Penitentiary Directive No. 09.017, Transportation of Offenders. Such approval shall be obtained in advance, if possible.

1)    When transporting or moving an offender within or outside of the institution in accordance with institutional procedures;

2)    When transporting an offender whose medical condition is not conducive to full use of restraints;

3)    When the past history and/or present behavior of the offender creates the possibility of bodily harm to any person, property damage or escape;

4)    During court appearances when the Court issues an order that the other restraints be removed (see Department Regulation No. C-03-003 "Escorted Absences" for additional information) or other such activities where the use of restraints that are not visible or prominently observable is preferred.

b.    The Medical Director or his designee should be consulted to be medical clearance for electronic restraint belt use and the electronic restraint belt should never knowingly be used on the following offenders:

Penitentiary Directive No. 09.002
June 27, 2011
Page 14 of 18

1)  Elderly offenders over 65 years of age;

2)  Wheelchair bound;

3)  Severely ill offenders:

    a)  Cardiac: Offenders with pacemakers or defibrillators, coronary artery disease or congestive heart failure;

    b)  Liver: Offenders with cirrhosis and swelling of the legs or abdomen;

    c)  Kidney: Offenders on dialysis;

    d)  Stroke: Offenders that have trouble ambulating and therefore, use a cane or walker;

    e)  HIV: Offenders with a CD4 count of 50 or less;

    f)  Lung: Offenders with chronic obstructive pulmonary disease (COPD) or asthma bad enough to require more than one inhaler for treatment;

    g)  Cancer: Offenders with a current diagnosis of cancer.

d.  Except as stated in D, 6, b the electronic restraint belt may also be otherwise used at the discretion of the Warden or designee in accordance with the provisions of this Section.

e.  After Use

1)  When EMD's have been used, affected offender(s) that suffered the electrical shock(s) shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.

2)  Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

3)  All instances in which EMD's are used shall be reported in accordance with Section F of this regulation.

Penitentiary Directive No. 09.002
June 27, 2011
Page 15 of 18

E.    CANINE UNITS

Canine units shall be available to conduct building searches for offenders, to assist in escape procedures, to protect officers and others from serious bodily injury and death, to control crowds/riots, and to detect the presence of concealed contraband.

1.    The Warden or his designee shall be responsible for determining whether a situation justifies canine use and appropriate tactical measures that should be taken.

2.    Canines shall not be handled or given commands by anyone other than the assigned handler and/or his alternate.

3.    Unless otherwise approved by the Warden or his designee, canines shall be used in a leashed condition at all times.

4.    Canines may be used between the fences to provide perimeter security, when deemed necessary by the Warden or his designee. In the event that canines are utilized in providing perimeter security, one officer will provide roving security.

F.    REPORTING REQUIREMENTS

1.    All situations involving the use of force, including the discharge of any firearms, use of chemical agents and use of other security equipment (except for training purposes) must be documented to establish the identity of personnel and offenders involved and to describe the nature of the incident. In reporting instances, the standard Unusual Occurrence Report (UOR) shall be submitted to the Warden or designee as soon as possible after the incident, but no later than the end of tour of duty and shall be reviewed by the Warden or designee. Each time the electronic device is used the Armory will provide a Use of Electronic Device Documentation (Form 09.002-A) to be completed and forwarded to the appropriate areas.

NOTE: This review does not include incidents where mechanical restraints are applied to an offender in a calm, non-hostile situation where no other use of force was required, i.e., instructing an offender to allow an officer to apply handcuffs in order to be escorted to the cell block following a rule violation.

2.    The Warden or designee shall investigate all allegations of improper use of force and shall notify other authorities, as appropriate.

3.    Reporting in accordance with Department Regulation No. C-05-001 "Activity Reports/Unusual Occurrence Reports Operational Units" is required.

Penitentiary Directive No. 09.002
May 7, 2012
Page 16 of 18

4.  Administrative review of use of force incidents shall be conducted in accordance with the provisions of Department Regulation Nos. C-01-008 "Firearms and Weaponry Training" and C-05-001A "Serious Unusual Occurrence Review Panel."

G.  EXAMINATION BY MEDICAL STAFF

As soon as possible after a situation has been brought under control through the use of force, the offender involved shall be examined by qualified medical personnel. Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

H.  SECURITY EQUIPMENT – ACCESS, STORAGE AND INVENTORY

1.  The Armory is responsible for the maintenance and distribution of security equipment to all units, except canine units. Only personnel designated by the Assistant Warden IV/Security shall have access to the Armory's security equipment storage area. The Armory is responsible for the issuance of security equipment to authorized personnel for the performance of official duties, e.g., field officers, trip officers, roving security, tower officers, tactical unit personnel and chase team personnel. Any other issuance of security equipment shall be at the discretion of the Warden or his designee.

2.  The Armory shall issue security equipment to authorized personnel such as shift supervisors and senior security officers of designated areas for use within the institution. Issuance of these items shall be documented by the issuing officers and signed by the receiving officer.

3.  The Armory shall maintain an inventory of all weapons, ammunition, chemical agents, and related security devices. A written record will be maintained by Armory personnel regarding the issuance of any equipment in order to determine accountability and responsibility. This report, which will be submitted to the Assistant Warden IV/Security at least monthly, will detail weapon conditions and list expiration dates of other equipment.

4.  At the beginning of each shift, Armory personnel will perform a test of the electronic devices. The results of the tests will be documented. If the electronic device fails the test, the Armory officer will notify the Communications Department to arrange for repairs.

5.  Cellblock units will store chemical agents in a locked cabinet. Chemical agents stored in the cabinet will be inventoried daily. At the beginning and the end of the shift, the Cellblock supervisor will log the weight of each can in the logbook.

6.  In the event that chemical agents are used, the name and number of the offender the agent was used on will also need to be logged in the logbook. The can will be weighed after the incident and the new weight noted in the logbook.

7.  It is the responsibility of each respective Assistant Warden to ensure that expired agents and empty cans are sent to the Armory for replacement.

**THIS PAGE SUPERSEDES PAGE 16 DATED JUNE 27, 2011.**

Penitentiary Directive No. 09.002
June 27, 2011
Page 17 of 18

H.    LAW ENFORCEMENT/VISITOR WEAPONS

  1.    Unless authorized by the Warden, law enforcement officers and visitors are not permitted to carry their firearms inside the confines of the prison.

  2.    Perimeter gate security personnel will secure weapons in a secure storage locker and issue receipts to the owners of the weapons.

I.    ABUSE OF OFFENDERS, CORPORAL PUNISHMENT, OR USE OF UNNECESSARY OR EXCESSIVE FORCE

  1.    No employee shall abuse an offender for any reason. Violations are actionable under the Corrections Services Employee Manual, Employee Rules and Disciplinary Procedures.

  2.    The force used shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.

  3.    Necessary force may include the use of physical contact, chemical agents, intermediate/impact weapons and other less lethal weapons and munitions, mechanical restraints, electric muscular disruption devices, and firearms.

  4.    The following uses of force are prohibited: corporal punishment, unnecessary force, and excessive force.

J.    TRAINING

  1.    All correctional officers and other appropriate employees shall be provided a copy of the current use of force policy and thoroughly trained pursuant to Department Regulation No. C-01-008 before being authorized to carry any weapon. Authorized employees shall be instructed in accordance with the regulation, including policies and procedures, and shall be provided with necessary training and retraining at least annually. Employees shall adhere to the principles and practices of the regulation during training sessions.

  2.    All Corrections Security Officers will be trained in approved methods of self-defense and the use of force continuum.

  3.    Only those authorized employees who have successfully completed specialized training and/or qualification in the operation and use of less lethal and/or lethal weapons may use such weapons.

Penitentiary Directive No. 09.002
June 27, 2011
Page 18 of 18

4.    All instructors authorized to train others in the use of firearms, use of chemical agents, and use of force are certified by a competent authority to conduct such training.   All chemical agent instructors must be trained in the treatment of individuals exposed to a chemical agent.

Burl Cain, CCE
Warden

Attachment:        DPS&C Weapons List

Form:               LSP-09.002-A       Use of Electronic Device Documentation

This policy supersedes Penitentiary Directive No. 09.002 dated February 22, 2008.

Department Regulation No. C-01-008 and C-02-006
20 December 2010

## WEAPONS LIST

The following weapons only are approved for purchase without authorization from the Secretary or designee.

### MECHANICAL AND FLEX CUFF RESTRAINTS
### (See Section 10. of Department Regulation No. C-02-006)

**Applies to Department Regulation No. C-02-006 "Use of Force" ONLY**

Legirons

Handcuffs (with standard case)

Flexcuffs

Restraint Belt with or without black box

Grip Restraint System

Side Restraints

Leather Belt Restraints

Leg and Arm Braces

Soft Wrist and Ankle Restraints

The Tube

Facial Protective Mask.

### EXTREME RESTRAINTS
### (See Section 11. of Department Regulation No. C-02-006)

Restraint Chair

Straightjacket

### CHEMICAL AGENTS, INTERMEDIATE IMPACT WEAPONS
### AND OTHER LESS LETHAL WEAPONS
### (See Section 12. of Department Regulation No. C-02-006)

1.    **Chemical Aerosols**

       Capstun - OC

Department Regulation Nos. C-01-008 and C-02-006
20 December 2010
Page Two

Deep Freeze – OC/CS

Freeze +P – OC/CS

Clear Out – OC/CS

Punch II - OC

Body Guard - OC

Sabre Red - OC

Fox 5.3 - OC

First Defense HV Stream – OC

2.   **Chemical Grenades**

HC Smoke/CN/CS

CN/CS Rubber Ball

CN/CS/OC Blast Dispersion

3.   **Chemical Projectiles (HC, CN, CS)**

Short/long range

Blast/Muzzle dispersion

Barricade Flight/Skate Shell - Deleted 11/15/06 - May Utilize Existing Inventory
Only

Barricade Penetrating Round

Flite Rite - Deleted 11/15/06 - May Utilize Existing Inventory Only

Skat Shell

Stinger cartridge and product - Deleted 4/20/99 - May Utilize Existing Inventory
Only

TKO Fragible Slug - Deleted 11/15/06 - May Utilize Existing Inventory Only

Door Breaching Round

Department Regulation Nos. C-01-008 and C-02-006
20 December 2010
Page Three

12 Gauge Rubber Pellets - Deleted 4/20/99 - May Utilize Existing Inventory Only

Multiple Baton Shell - Deleted 4/20/99 - May Utilize Existing Inventory Only

Fogger Additives

Pepper Fogger Machine/Smoke Generator

Fox mixes/CN/CS/OC

Flush mix

Insert Screening Smoke

4.    **Chemical Agent Launching Systems and Chemical Dispersants**

Ispra Israeli gas gun and CS Irritant

Israeli Protecto-jet and Solution

37 mm Caliber: gas gun/launcher (Def Tec, Smith & Wesson, Ferret, Federal and Penn Arms)

1.5 Caliber: gas gun - Deleted 11/15/06 - May Utilize Existing Inventory Only

40 mm Caliber: gas gun/launcher (Def Tec, Fed Labs, Smith & Wesson, Ferret and Federal)

5.    **Intermediate/Impact Weapons**

24" riot batons

36" riot batons

PR 24 batons

Expandable batons

Concave riot shield

Convex riot shield

Bullet Resistant Shield

Department Regulation Nos. C-01-008 and C-02-006
20 December 2010
Page Four

6.    **Other Less Lethal Weapons**

Stinger Grenade, Rubber Pellet and Rubber Pellet Combo CS (Mandatory)

12 Gauge Projectiles (Low Velocity Rubber Pellet and Rubber Sabot and Combo CS) (Mandatory)

Bean Bag Rounds for 12 Gauge and 37 mm Caliber (Mandatory) and 40 mm Caliber (Discretionary)

Multiple Baton Round Wood or Foam Rubber 37/38 mm Caliber (Mandatory) and 40 mm Caliber (Discretionary)

SA 200 Pepper Launcher Semi Automatic Rifle (Discretionary)

Pepperball rounds (OC powder filled, Inert powder filled, Inert liquid filled) (Discretionary)

12 Gauge Blank Launching Rounds (Discretionary)

Distraction Device (Concussion Grenade and 12 Gauge and 40 mm Caliber) (Discretionary)

Stinger Cartridges for 37/38 mm Caliber (Discretionary) and 40 mm Caliber (Discretionary)

Flexible Baton 12 Gauge close range (10 to 50 feet) (Discretionary)

Flexible Baton 37 mm Caliber and 40 mm Caliber close range (10 to 65 feet) (Discretionary)

Grab Nets (Discretionary)

Spike System (Discretionary)

Canines (Discretionary)

**ELECTRONIC MUSCULAR DISRUPTION DEVICES**
**(See Section 13. of Department Regulation No. C-02-006)**

Electronic Capture Shield (Mandatory)

Electronic Nova RACC Restraint Belt System (Mandatory)

TASER® and cartridges (Applies to Department Regulation No. C-02-006A "Use of TASER®" ONLY)

Department Regulation Nos. C-01-008 and C-02-006
20 December 2010
Page Five

## LETHAL WEAPONS
### (See Section 14. of Department Regulation No. C-02-006)

1.    **Handguns**

.40 Caliber: Smith and Wesson, Glock, Ruger, Sig Sauer, Springfield Armory and Kimber Arms

.38 Caliber: Smith and Wesson, Colt and Ruger

.357 Caliber: Smith and Wesson, Colt, Dan Wesson and Ruger

9mm Caliber: Smith and Wesson, Glock, Ruger, Sig Sauer, Springfield Armory and Kimber Arms

.45 Caliber: Ingram Model 6, Springfield Armory and Kimber Arms

.357 Sig Caliber: Sig Sauer

(Or equivalent caliber/function as may be available on state contract under different brand names.)

2.    **Rifles**

.223 Caliber: Colt AR-15 SP-1, Ruger Mini-14 and Bushmaster A3 M4 Patrolman

.30 Caliber: Universal M-1 carbine

30-30 Caliber: Marlin #336C and Winchester #94 - Deleted 10/31/02 - May Utilize Existing Inventory Only

30-06 Caliber: Winchester #70 and Remington #700

.300 Caliber: Winchester #700 Magnum Caliber

.308 Caliber: Remington #700

.243 Caliber: Remington #700

9 mm Caliber, 10 mm Caliber and 40 Caliber: Heckler and Koch MP5

45 ACP Caliber: Car 45 Olympic Arms

(Or equivalent caliber/function as may be available on state contract under different brand names.)

Department Regulation Nos. C-01-008 and C-02-006
20 December 2010
Page Six

3.    **Shotguns**

12 gauge Winchester #1200

12 gauge Mossberg #3000

12 gauge Remington #870 and #1100

12 gauge Ithaca #37

(Or equivalent gauge/function as may be available on state contract under different brand names.)

4.    **Ammunition**

Appropriate ammunition may be purchased for each weapon listed herein.

LSP-09.002-A
July 2, 2004

LOUISIANA STATE PENITENTIARY
## USE OF ELECTRONIC DEVICE DOCUMENTATION

| DATE: | TIME: |
|---|---|
| OFFENDER(S) | DOC # |
| | |
| | |
| | |

| CIRCUMSTANCES REQUIRING USE OF ELECTRONIC DEVICE | |
|---|---|
| | |
| | |
| | |
| | |
| | |

| SUPERVISOR AUTHORIZING USE OF ELECTRONIC DEVICE: | |
|---|---|
| EMPLOYEE OPERATING ELECTRONIC DEVICE: | |
| OTHER EMPLOYEES ENTERING CELL: | |
| | |
| | |
| OTHER WITNESSES: | |
| | |

| COMMENTS ABOUT ACTUAL USE OF ELECTRONIC DEVICE | |
|---|---|
| (How many seconds used, number of times used, effects on the offender, any effects on employees, problems with the device, etc.) | |
| | |
| | |
| | |

| EMT OR OTHER MEDICAL PERSONNEL WHO EXAMINED OFFENDER(S) AFTER USE OF ELECTRONIC DEVICE | |
|---|---|
| | |
| | |

This form is to be completed each time the Electronic Device is used. Unusual Occurrence Reports will also be prepared and attached. Distribution of reports is to follow the same method used to distribute UORs with an additional copy going to Medical Records.

12/05/2012  14:34     2256552290

Baton Rouge Radiology Group - Synapse - Radiology Reports

## ANGOLA STATE PRISON
### 17544 Tunica Trace
### Angola, LA 71282
### Phone:(225)721-0420
### Fax:

| | | | |
|---|---|---|---|
| **Name:** | Herbert Martin | **Exam Date:** | 07/25/2012 |
| **Patient ID:** | 792139 | **Exam:** | XR SKULL COMP MIN 4 VIEWS \| 70260 |
| **DOB:** | | **Reason:** | - |
| **Phone:** | | **Referrer:** | Physician Unknown |
| **Accession#:**2208706 | | **2nd Referrer:** | |
| **Second. ID:** 76859 | | **3rd Referrer:** | |

### Results

**EXAM: XR SKULL COMP MIN 4 VIEWS**

**CLINICAL HISTORY:** Trauma

**FINDINGS:** The bony calvarium appears intact. The sella is normal in size and configuration.

**IMPRESSION:** Negative study.

**Report Electronically Signed by: Julian Foreman
MD
Report Signed on: 07/25/2012**

| | | | |
|---|---|---|---|
| Pt. Name: | Herbert Martin | Exam: | XR SKULL COMP MIN 4 VIEWS \| 70260 |
| Patient ID: | 792139 | Acc: | 2208706 |
| Completed Date: | 07/25/2012 12:17 PM | Interpreting Rad: | Julian Foreman MD |
| Transcribed By: | | Dictated Date: | 07/25/2012 3:08 PM |
| Transcribed Date: | 07/25/2012 | Finalized Date: | 07/25/2012 |

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

CASE NUMBER: LSP-2012 -3321

TO:  HERBERT MARTIN 76859          J GAR 2/R
     Offender's Name and Number     Living Quarters


10/22/2012
Date of Incident


X                    ACCEPTED:  This request comes to you from the Wardens Office.  A response will be
                     issued within 40 days of this date.

                     REJECTED:  Your request has been  rejected for the following reason(s):




11/29/2012                                  Trish Foster
Date                              Warden's Signature or Designee

07¼/cp5 2012-3321   R E C E I V E D

OCT 2 9 2012

THIS IS A REQUEST FOR ADMINISTRATIVE REMEDY (ARP)

Legal Programs Department

THIS IS A COMPLAINT AGAINST MAJOR JOSEPH HOOKER

TO:   **Warden Burl Cain**
**Louisiana State Penitentiary**

R E C E I V E D

OCT 2 9 2012

FROM:   **Herbert Martin,      76859**
 Name            DOC#

WARDEN'S OFFICE

**Gar  2   Right ; CELL #3.**
Location

## COMPLAINT

On July 25, 2012, I was housed on Gator 3-R-2. Approximately 10:15 AM, Sergeant Adam put me on the exercise yard for 1-hour. When it was time to come off the yard I was sitting up against the fence and Sgt. Adam stated...... time to come in, I told Sgt. Adam to give me a minute to pull myself together, I was dizzy, I feel like I'm about to pass out, it was very hot that day. I was still sitting, holding on to the fence trying to get up, but couldn't. At that time Sgt. Adam summon for help, minutes later Maj. Hookers, Capt. Sanders and Sgt. Adams committed assault and battery on me.

## GENERAL ALLEGATIONS

1.

On July 25, 2012 Maj. Hooker were acting under color of state law at all material times herein.

2.

Maj Hooker and Capt. Sanders both was beating and kicking me. Maj. Hooker also slammed my head into the concrete, then began punching me in the head and face while Capt. Sanders kick me in the back, ribs and other body parts. I was fully restrained during these time.

3.

These assaults continued all the way to Gar-1-R, where I was sprayed with mace.

Thereafter, in the room they started beating me again. I was down on the floor Maj. Hooker said "get up bitch." they help me up then push my head into the wall of the shower. I fell to the floor and they starting beating me again. then Maj. Hooker kicked my teeth out.

5.

I was finally taken to the hospital (See record) where I was threaten by the doctor with a write up.

6.

Each officer displayed a callous indifference to the plaintiff's federally protected rights.

7.

Plaintiff required medical attention for the injuries sustained because of the violation of his rights for the various injuries.

8.

The action of the defendant(s) were intended to cause pain, damages and sufferings.

9.

The use of force was unnecessary and excessive to any need and/or there was no need for use of force under the 8th Amendment and the circumstance presented.

10.

La. R.S. 15: 829 expressly prohibits the use of corporal punishment.

11.

The actions of defendant(s) constitute corporal punishment, unecessary and /or excessive use of force in violation of state and federal law and policies and procedures in place and established by the State of Louisiana and Department of Corrections.

12.

It was not objectively reasonable to use force on inmate who was restrained and not resisting.

13.

Defendants acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate plaintiff's constitutional rights.

RELIEF

VIOLATION OF CIVIL RIGHTS

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. Under the color of State and Local Law, all defendants be held accountable for their actions and after a thorough investigation that they be charge with malfeasance of office and the District Attorney of the 20th Judicial District be notified.

Done and signed this _22_ day of _October_, 2012.

Respectfully submitted by:

_Herbert D. Martin_

Camp- J. GAR (2.) - Right; CELL # 3.