# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**HERBERT MARTIN (#76859)**                           **CIVIL ACTION**

**VERSUS**

**MAJOR JOSEPH HOOKER, ET AL.**                       **NO. 13-0508-SDD-RLB**

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on July 15, 2015.

                                   **RICHARD L. BOURGEOIS, JR.**
                                   **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**HERBERT MARTIN (#76859)**                                   **CIVIL ACTION**

**VERSUS**

**MAJOR JOSEPH HOOKER, ET AL.**                               **NO. 13-0508-SDD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion for Summary Judgment of defendants Joseph Hooker and John Sanders (R. Doc. 27). This Motion is not opposed.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Major Joseph Hooker, Capt. John Sanders and Sgt. Adams, complaining that the defendants violated his constitutional rights on July 25, 2012, by subjecting him to excessive force and deliberate medical indifference on that date.[1]

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent Administrative Remedy proceedings, certified copies of excerpts from the plaintiff medical records, a copy of

---

1. An attempt by the United States Marshal's Office to serve defendant Sgt. Adams at the offices of the Louisiana Department of Public Safety and Corrections has proven unsuccessful, specifically because the Department is unable to positively identify this individual in the absence of a "first name" and, so, would not accept service on his behalf  *See* R. Doc. 7. Since the filing of the Marshal's Return of Service in November, 2013, *see id.,* the plaintiff has failed to undertake any action to further identify this defendant or provide information that would allow the Department to do so. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceeding. It is appropriate, therefore, that the plaintiff's claims asserted against Sgt. Adams be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon this defendant.

Department Regulation No. C-02-006 (re: "Use of Force"), a copy of the LSP Camp J Shower/Yard Roster for July 25, 2012, and the affidavits of Connie McCann and defendants Joseph Hooker and John Sanders.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must

review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges that on July 25, 2012, during his one-hour yard period, he became dizzy and sat down in the exercise yard to keep from falling. Shortly thereafter, defendant Sgt. Adams approached and instructed the plaintiff to stand up and allow himself to be restrained for return to his cell. The plaintiff alleges that he attempted to do so but was unable. In response, defendant Adams called for assistance, and defendants Hooker and Sanders arrived. The plaintiff asserts that he then managed to stand up and comply with the officers' instructions to come to the gate. The defendants then placed the plaintiff in restraints and opened the gate to the exercise yard. According to the plaintiff, defendant Hooker then immediately punched the plaintiff in the face, knocking the plaintiff to the ground, and defendants Hooker and Sanders proceeded to punch and kick the plaintiff as they dragged him back to the cell tier and placed him in the shower cell. The plaintiff further alleges that defendant Hooker then sprayed a chemical irritant into the plaintiff's eyes and mouth without justification or provocation. Finally, the plaintiff asserts that the defendants either knew or should have known that he was suffering from a diabetic seizure and were deliberately indifferent to his serious medical needs when they subjected him to excessive force without first contacting the prison medical department.

Initially, the Court notes that the plaintiff has named the defendants herein in both their individual and their official capacities. Notwithstanding, § 1983 does not provide a federal forum for a litigant who seeks monetary damages against state officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of

§ 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, the plaintiff's claim asserted against the defendants in their official capacities for monetary damages is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29.

Turning to the plaintiff's claim asserted against the defendants in their individual capacities, the Court next addresses the defendants' assertion that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to their participation in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established at the time that the violation occurred. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive

inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[2]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendants' motion should be granted. Specifically, the Court finds that the plaintiff has not met his burden in opposing the defendants' motion and has not come forward with evidence sufficient to rebut the defendants' sworn assertions in connection with the plaintiff's claims.

First, with regard to the plaintiff's claim of excessive force, a use of force is excessive and violates the Eighth Amendment to the United States Constitution only if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malevolent action by a prison guard, however, gives rise to a federal cause of action, and the Eighth Amendment's prohibition against

---

2. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986). The fact that an inmate may have sustained only minimal injury does not end the inquiry, and an inmate who is subjected to gratuitous force by guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. The extent of injury may be relevant, however, to a determination whether an alleged use of force was excessive under the circumstances, and the factors that may considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

Applying the foregoing standard, the Court finds that the plaintiff has failed to overcome the defendants' assertion of qualified immunity in connection with this claim. Although the plaintiff alleges, in an unsworn Complaint, that on July 25, 2012, defendants Hooker and Sanders placed him in full restraints and then punched and kicked him without provocation, and defendant Sanders thereafter sprayed the plaintiff in the face with a chemical agent, the defendants have responded by presenting sworn affidavits that directly refute the plaintiff's assertions. Specifically, the defendants attest that on the referenced date, they were called to the exercise yard in response to the plaintiff's declaration of a medical emergency and, upon arrival, ordered the plaintiff to come to the gate and allow himself to be restrained. After placing the plaintiff in restraints, the defendants opened the gate to the exercise yard, whereupon the plaintiff

charged out of the gate and attempted to head-butt defendant Sanders, falling to the ground and hitting his face as he did so. The defendants assert that they then took appropriate action to bring the plaintiff under control as the plaintiff continued to violently struggle, including the use of "arm locks" as they escorted the still-struggling and cursing inmate to administrative segregation. According to the defendants, upon arrival at the administrative segregation tier, they placed the plaintiff in the shower cell on the tier and ordered the plaintiff to come to the bars of the cell so that the restraints could be removed and he could put on a clean jumpsuit. The plaintiff, however, refused these directives. After repeated refusals, defendant Sanders left the tier, obtained a canister of chemical spray, and returned to the plaintiff's cell, giving the cannister to defendant Hooker. When the plaintiff continued to refuse orders by the defendants to come to the bars of the shower cell, defendant Hooker sprayed a brief one-second burst of chemical agent into the plaintiff's cell, whereupon the plaintiff complied with the defendants' instructions. The plaintiff was then allowed to shower, was given a clean jumpsuit, and was escorted to the prison infirmary for medical treatment. The prison medical records reflect that the plaintiff was in fact seen and treated on that date for symptoms consistent with the defendants' assertions.

In response to the foregoing, the plaintiff has presented neither documentary evidence nor any sworn statements to contravene the facts stated in the defendants' affidavits, much less evidence sufficient to meet his burden of proof, to rebut the defendants' assertion of qualified immunity, and to show the existence of a genuine disputed fact regarding whether the defendants in fact utilized unreasonable or constitutionally excessive force on the date in question. *See Gates v. Texas Department of Protective and Regulatory Services, supra*, 537 F.3d at 419 (recognizing that the plaintiff bears the burden of rebutting a defendant's assertion of qualified

immunity on motion for summary judgment). Specifically, the plaintiff has offered nothing to refute the defendants' sworn assertions or evidentiary showing that reflect that the plaintiff engaged in conduct on July 25, 2012, that justified some use of force against him on that date. Whereas the plaintiff asserted in his Complaint that the defendants utilized excessive force and sprayed him with a chemical agent without provocation, the plaintiff's Complaint is unsworn, and his factual allegations are thus not properly subject to consideration by the Court in connection with a motion for summary judgment. In the context of a motion for summary judgment, it is well-settled that a plaintiff may not rest upon mere allegations or assertions contained in his unsworn pleadings in opposing a properly supported motion. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 324. In response to such a motion, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* Stated another way, in order to meet his burden of proof, the party opposing a motion for summary judgment "may not sit on its hands, complacently relying" on conclusory assertions contained in his unsworn pleadings. *Weyant v. Acceptance Insurance Co.*, 917 F.2d 209, 212 (5th Cir. 1990). When a party does not file an opposition to a motion for summary judgment, the Court is permitted to consider the facts presented in support of the motion as undisputed and may grant summary judgment if the facts show that the movant is entitled to judgment in his favor. *See Jegart v. Roman Catholic Church Diocese of Houma - Thibodaux*, 384 Fed. Appx. 398, *2 (5th Cir. 2010). Further, pursuant to Local Rule 56(b) of this Court, the plaintiff's failure to oppose the defendants' motion for summary judgment warrants a conclusion that all of the facts contained in the defendants' Statement of Uncontested Material Facts are deemed to be admitted.

In the instant case, despite notice and an opportunity to appear, the plaintiff has not come forward with any competent evidence to refute the affidavits and documentary evidence presented by the defendants in support of their motion for summary judgment. What has been brought to the Court's attention for consideration is competent evidence adduced by the defendants, supported by affidavits and documentation, that reflects that the use of force against the plaintiff on July 25, 2012, was not for the sole purpose of maliciously and sadistically causing the plaintiff harm but, instead, was for the purpose of restoring order and maintaining control in response to the plaintiff's violent aggressive conduct and repeated refusal to obey the orders of security officers. Based upon the foregoing and upon the plaintiff's failure in this case to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, and failure to provide supporting evidence on his own behalf, the Court concludes that the defendants' motion is well-taken and that the defendants are entitled to summary judgment as a matter of law.

The same result follows in connection with the plaintiff's claim of deliberate medical indifference. Specifically, the only claim asserted in the Complaint relative to medical indifference is that the defendants, with purported knowledge that the plaintiff was suffering from a diabetic seizure, should have contacted the prison medical department before any use of force against the plaintiff. This assertion is unavailing. Considering the un-refuted evidence before the Court, it appears, to the contrary, that the plaintiff precipitated a potentially serious security threat by charging through the gate of the exercise yard on the referenced date, without warning, and attempted to head-butt defendant Sanders. The plaintiff thereafter continued to struggle against the defendants and continued to refuse direct orders. It follows from these facts that the plaintiff did not provide the defendants with an opportunity to first contact the prison

medical department regarding the plaintiff's unanticipated violent behavior.

In order for there to be liability in connection with an inmate plaintiff's claim of deliberate medical indifference, there must be a finding that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985). See also *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In the instant case, in the absence of any evidence to refute the defendants' sworn assertions that they were simply reacting in response to the plaintiff's unanticipated violent conduct, there can be no finding of deliberate indifference on the part of the defendants in connection with this claim. Accordingly, this claim, as well, is subject to dismissal.

## RECOMMENDATION

It is recommended that the plaintiff's claims asserted against defendant Sgt. Adams be dismissed, without prejudice, for failure of the plaintiff to serve this defendant within 120 days as mandated by Fed. R. Civ. P. 4(m). It is further recommended that the Motion for Summary Judgment of the remaining defendants (R. Doc. 27) be granted, dismissing the plaintiff's claims asserted against these defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on July 15, 2015.

                                        **RICHARD L. BOURGEOIS, JR.**
                                        **UNITED STATES MAGISTRATE JUDGE**